**FOURTH DIVISION**
**DILLARD, C. J.,**
**RAY and SELF, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 26, 2018**

# In the Court of Appeals of Georgia

A17A1728. LOVELESS v. THE STATE.

DILLARD, Chief Judge.

This is the second appearance of this case before our Court. We previously affirmed Loveless's convictions for trafficking in methamphetamine, driving without a license, giving false information to law enforcement, and obstruction when he challenged them on direct appeal.[1] Upon remittitur, the trial judge concluded, *sua sponte*, that the sentence entered on Loveless's conviction for trafficking in methamphetamine was void, and thereafter conducted a second sentencing hearing, during which Loveless was resentenced. Loveless now appeals from the entry of his new sentence, arguing that the trial court erred by resentencing him as a recidivist under OCGA § 17-10-7 (c) when (1) he had started to serve his previously entered

---

[1] *See Loveless v. State*, 337 Ga. App. 894 (789 SE2d 244) (2016).

sentence and there was no additional or new evidence to permit such a sentence; (2) one of his three prior offenses was the crime of simple possession of a controlled substance under OCGA § 16-13-30 (a); and (3) one of his three prior offenses was a federal charge of counterfeiting. For the reasons set forth *infra*, we affirm.

The facts underlying Loveless's criminal conviction are set forth in our prior opinion.[2] Specifically, Loveless was found in possession of 220.11 grams of material that tested positive for methamphetamine, was convicted in a bench trial of trafficking in methamphetamine,[3] and was originally sentenced "to a life term, to serve 25 years in confinement and the remainder on probation."[4] We affirmed Loveless's convictions and issued a remittitur to the trial court on July 12, 2016. Thereafter, on August 12, 2016, the trial court held a resentencing hearing, announcing at the outset that, following the direct appeal, it had become "clear that the sentence on count one [was] void"[5] because Loveless had been "sentenced under the wrong [C]ode section." The trial court explained that it had erroneously sentenced Loveless under OCGA § 16-

---

[2] *See id.* at 895-96.

[3] *See* OCGA § 16-13-31 (e).

[4] *Loveless*, 337 Ga. App. at 896.

[5] Count one was the offense of trafficking in methamphetamine.

2

13-30 when he should have been sentenced under OCGA § 16-13-31 (e) instead. Following a brief period of argument by the State and Loveless's counsel, the trial court entered a new recidivist sentence under OCGA § 16-13-31 (e), OCGA § 17-10-7 (a), and OCGA § 17-10-7 (c). And again, at the conclusion of the hearing, after entering a new sentence of 30 years, to serve 25 years, the trial court reiterated that it was doing so because "the original sentence on count one [was] void ab initio."

Loveless appeals from this new sentence, asserting the enumerations of error set forth *supra*. And because this appeal presents questions of law, we will review the trial court's decision *de novo*.[6] But at the outset, before addressing his enumerations of error, we note again that Loveless previously filed an appeal with this Court, for which a paper transcript and record were transmitted for our review. In the present notice of appeal, Loveless indicates that the clerk should omit nothing from the appeal, and that a transcript of evidence and proceeding will be filed for inclusion in the record on appeal. The electronic record for the current appeal, however, is limited to filings relevant to the case *after* the remittitur from the prior appeal. Loveless nowhere indicated in his notice of appeal an intention to rely upon the paper record

---

[6] *See Strickland v. State*, 301 Ga. App. 272, 273 (687 SE2d 221) (2009) (reviewing appeal of trial court's resentence *de novo* because it presented a question of law).

and transcript previously transmitted to this Court in his prior case, yet his appellate brief makes numerous references to comments and rulings made by the trial court that are contained within that record. Nevertheless, the previously filed paper record having not yet been recycled,[7] this Court has reviewed it when necessary to address Loveless's enumerations of error. That said, we take this opportunity to remind appellants that the burden is upon *them* to ensure that a complete record is transmitted to this Court for review in every appeal and to notify this Court of any intent to rely

---

[7] *See* COURT OF APPEALS RULE 42 (a) ("The Court will maintain the record of an appeal for one year after the remittitur date unless a party asks the Court in writing to maintain the record for an additional six months, and explain why. The requesting party must send an additional request fourteen days before the expiration of each six-month period to avoid the record being destroyed. The Court will not provide any notice that the record is being destroyed other than that contained in the notice of remittitur.").

upon a previously transmitted record and/or transcript.[8] We turn now to Loveless's enumerations of error.

1. First, Loveless argues that the trial court erred in resentencing him as a recidivist under OCGA § 17-10-7 (c) when he had started to serve his previously entered sentence and there was no additional or new evidence to permit a new sentence as a recidivist. Loveless essentially makes two challenges: (1) to the trial court's jurisdiction to resentence him, and (2) to the sentence that was imposed upon resentencing. We disagree that the trial court erred in either respect.

(a) *The trial court's jurisdiction to resentence Loveless*. As the Supreme Court of Georgia has recognized, after a defendant begins serving his sentence, his sentence can only be increased through resentencing when "(a) such resentencing is allowed by law, and (b) the defendant has no reasonable expectation in the finality of the

---

[8] *See Holman v. State*, 329 Ga. App. 393, 396-97 (1) (765 SE2d 614) (2014) (holding that it is the appellant's burden to notify Court of Appeals of his or her intent to rely upon a transcript in a previously filed appeal, and noting that "to the extent [the appellant] wished to rely upon the transcript transmitted by the trial court in the prior appeal . . . , he had a duty under OCGA § 5-6-37 to specify in the notice of appeal that he was not requesting the transmission of the transcript in this appeal because one had previously been transmitted in a prior appeal and was already on hold at the Court"); *see also* COURT OF APPEALS RULE 42 (b) ("If the parties anticipate that the case will return to the Court or be appealed to the Supreme Court of the United States, the parties must notify the Clerk, in writing, to hold the record in accordance with the requirements in Rule 42 (a).").

original sentence."[9] Without these special circumstances, the resentencing "constitutes a double punishment that runs afoul of the Fifth Amendment prohibition against double jeopardy."[10] But it is well established that a trial court has jurisdiction to "resentence defendants at any time when their sentences are void."[11]

In this case, when the trial court originally sentenced Loveless, the State argued that the "trafficking statute[[12]] says the [mandatory] max[imum] [sentence] is 30 [years]" but that the trial court could not "just look at the trafficking statute in a vacuum" and instead also had to consider OCGA § 16-13-30 (d), which focuses on possession with the intent to distribute. That statute, the State argued, set the maximum sentence at "40 or life," also giving the trial court some discretion. The State then argued that OCGA §§ 17-10-7 (a) and (c) were applicable for purposes of sentencing as a recidivist, given that Loveless had three prior convictions.

---

[9] *Wilford v. State*, 278 Ga. 718, 719-20 (606 SE2d 252) (2004); *accord Williams v. State*, 273 Ga. App. 42, 46 (6) (614 SE2d 146) (2005).

[10] *Williams*, 273 Ga. App. at 46 (6); *accord Strickland*, 301 Ga. App. at 273.

[11] *Jordan v. State*, 253 Ga. App. 510, 511 (1) (559 SE2d 528) (2002); *accord Williams v. State*, 271 Ga. 686, 689 (2) (523 SE2d 857) (1999); *Crumbley v. State*, 261 Ga. 610, 610 (2) (409 SE2d 517) (1991).

[12] OCGA § 16-13-31.

Following argument, the trial court applied the maximum sentence from OCGA § 16-13-30 (d) and sentenced Loveless as follows:

> As I read the code sections, [OCGA §] 17-10-7 (a) applies which means I have to sentence him to the longest period of that—the maximum. The maximum on this is life. The maximum on this says 40 or life. . . . Life would be the maximum. I mean, nobody knows how long you're going to live and I respect that part[,] but it would be life. So I have to give him life. But I can probate it. I'm not going to sentence him under [OCGA § 17-10-7] (c). I don't think [OCGA § 17-10-7] (c) applies to this situation.

When the State asked the court to provide a specific reason as to why OCGA § 17-10-7 (c) did not apply, the trial court gave a terse response: "I don't have to [give a reason] and I'm not going to. I don't think it applies. Period." Thus, the trial court's original sentence as to trafficking in methamphetamine was "life, serve 25 years, $300,000 fine[,]" a 12-month concurrent sentence as to the remaining counts, with recidivist sentencing under OCGA § 17-10-7 (a) only.

As detailed *supra*, when the trial court *sua sponte* held a resentencing hearing, the trial judge explained that she had erroneously sentenced Loveless under OCGA § 16-13-30 (d) rather than OCGA § 16-13-31 (e) and declared that the original sentence was void. Additionally, the trial court's new sentence applied OCGA § 17-

7

10-7 (a) *and* OCGA § 17-10-7 (c). As we will explain *infra*, because the trial court was correct that it had imposed a sentence not allowed by the plain text of the law, the sentence was void, and the trial court retained jurisdiction to resentence Loveless.[13]

Indeed, OCGA § 16-13-30 (d) provides as follows:

Except as otherwise provided, any person who violates subsection (b) of this Code section[14] with respect to a controlled substance in Schedule I or Schedule II shall be guilty of a felony and, upon conviction thereof, shall be punished by imprisonment for not less than five years nor more than 30 years. Upon conviction of a second or subsequent offense, he or she shall be imprisoned for not less than ten years nor more than 40 years or life imprisonment. The provisions of subsection (a) of Code Section 17-10-7 shall not apply to a sentence imposed for a second such offense; provided, however, that the remaining provisions of Code Section 17-10-7 shall apply for any subsequent offense.

---

[13] *See Williams*, 271 Ga. at 689 (2); *Crumbley*, 261 Ga. at 610 (2).

[14] *See* OCGA § 16-13-30 (b) ("Except as authorized by this article, it is unlawful for any person to manufacture, deliver, distribute, dispense, administer, sell, or possess with intent to distribute any controlled substance.").

8

This is the provision under which the trial court initially sentenced Loveless to life, serve 25 years. But OCGA § 16-13-31 (e), under which Loveless was convicted of trafficking in methamphetamine, provides as follows:

> Except as authorized by this article, any person who sells, delivers, or brings into this state or has possession of 28 grams or more of methamphetamine, amphetamine, or any mixture containing either methamphetamine or amphetamine, as described in Schedule II, in violation of this article commits the felony offense of trafficking in methamphetamine or amphetamine and, upon conviction thereof, shall be punished as follows: . . . If the quantity of methamphetamine, amphetamine, or a mixture containing either substance involved is 200 grams or more, but less than 400 grams, the person shall be sentenced to a mandatory minimum term of imprisonment of 15 years and shall pay a fine of $300,000.00[.][15]

Further, OCGA § 16-13-31 (h) specifies that "[a]ny person who violates any provision of this Code section shall be punished as provided for in the applicable mandatory minimum punishment and for not more than 30 years of imprisonment and by a fine not to exceed $1 million."

Thus, it is clear that the trial court initially erroneously sentenced Loveless under OCGA § 16-13-30 (d) and not OCGA § 16-13-31 (e). Accordingly, Loveless's

---

[15] OCGA § 16-13-31 (e) (2).

9

initial sentence was void, and the trial court retained jurisdiction to resentence Loveless to a maximum of 30 years (as opposed to his prior sentence of life), to serve 25 years.

(b) *The trial court's application of OCGA § 17-10-7 (c) to Loveless's new sentence.* Loveless not only challenges the trial court's authority to resentence him; he also takes issue with the fact that the trial court applied OCGA § 17-10-7 (a) *and* (c) when resentencing him as a recidivist, not just OCGA § 17-10-7 (a) as it had done with his initial sentence. He contends that because imposition of OCGA § 17-10-7 (c) makes him ineligible for parole, the trial court impermissibly increased his sentence.

OCGA § 17-10-7 (a) provides, in relevant part, that with only certain exceptions,

> any person who, after having been convicted of a felony offense in this state or having been convicted under the laws of any other state or of the United States of a crime which if committed within this state would be a felony and sentenced to confinement in a penal institution, commits a felony punishable by confinement in a penal institution shall be sentenced to undergo the longest period of time prescribed for the punishment of the subsequent offense of which he or she stands convicted, provided that, unless otherwise provided by law, the trial

10

judge may, in his or her discretion, probate or suspend the maximum sentence prescribed for the offense

OCGA § 17-10-7 (c) provides, in relevant part, that with only certain exceptions,

any person who, after having been convicted under the laws of this state for three felonies or having been convicted under the laws of any other state or of the United States of three crimes which if committed within this state would be felonies, commits a felony within this state shall, upon conviction for such fourth offense or for subsequent offenses, serve the maximum time provided in the sentence of the judge based upon such conviction and shall not be eligible for parole until the maximum sentence has been served.

Both OCGA § 17-10-7 (a) and (c) are subject to an exception in OCGA § 17-10-7 (b.1), which specifies that "[s]ubsections (a) and (c) of this Code section shall not apply to a second or any subsequent conviction for any violation of subsection (a), paragraph (1) of subsection (i), or subsection (j) of Code Section 16-13-30." The trial court applied subsection (a) to Loveless's initial sentence and declined to apply subsection (c); however, upon resentencing him under the correct Code section,[16] the trial court also thereafter applied both subsections (a) and (c), leaving Loveless without the possibility of parole. It is this specific change that he challenges within

---

[16] *See* Division 1 (a) *supra*.

11

the trial court's new sentence, contending that application of subsection (c) impermissibly increased his sentence, making it more severe without a clear reason for doing so.

> In *North Carolina v. Pearce*,[17] the Supreme Court of the United States held that
>
> [d]ue process of law . . . requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. . . . [Therefore,] whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear.[18]

Accordingly, the Supreme Court "created a presumption of vindictiveness whenever a more severe sentence is imposed after a new trial, 'which may be overcome only by objective information in the record justifying the increased sentence.'"[19] But since then, the Supreme Court has narrowed its holding, clarifying that due process "does not require an absolute bar on the increase of sentences after re-conviction or

---

[17] 395 U.S. 711 (89 SCt 2072, 23 LE2d 656) (1969).

[18] *Id*. at 725-26 (II) (C).

[19] *Adams v. State*, 287 Ga. 513, 515 (1) (696 SE2d 676) (2010) (quoting *United States v. Goodwin*, 457 U.S. 368, 374 (II) (102 SCt 2485, 73 LE2d 74) (1982)).

resentencing, but seeks only to prevent 'increased sentences when that increase was motivated by vindictiveness on the part of the sentencing judge.'"[20]

Here, although Loveless's new sentence does not offer the possibility of parole due to the application of OCGA § 17-10-7 (c), no presumption of vindictiveness applies to this situation because Loveless unsuccessfully challenged his conviction on direct appeal and, upon the issuance of the remittitur, the trial court *sua sponte* determined that the original sentence was void and resentenced him.[21] Accordingly, the trial court did not err by resentencing Loveless and, upon doing so, sentencing him as a recidivist under OCGA § 17-10-7 (c) when it had not done so previously.

---

[20] *Id.* (quoting *Texas v. McCullough*, 475 U.S. 134, 137 (II) (106 SCt 976, 89 LE2d 104) (1986)).

[21] *See Adams*, 287 Ga. at 516 (1) ("[A]s held by the Supreme Court [of the United States], the *Pearce* presumption of vindictiveness is inapplicable [when] the trial court itself concludes that an error has been made that warrants a new sentence."); *see also Texas v. McCullough*, 475 U.S. 134, 138-39 (II) (106 SCt 976, 89 LE2d 104) (1986) ("The facts of this case provide no basis for a presumption of vindictiveness. In contrast to *Pearce*, [the appellant's] second trial came about because the trial judge herself concluded that the prosecutor's misconduct required it. Granting [the appellant's] motion for a new trial hardly suggests any vindictiveness on the part of the judge towards him. Unlike the judge who has been reversed, the trial judge here had no motivation to engage in self-vindication. . . . The presumption of *Pearce* does not apply in situations where the possibility of vindictiveness is this speculative, particularly since the presumption may often operate in the absence of any proof of an improper motive and thus block a legitimate response to criminal conduct[.]" (citation and punctuation omitted)).

13

2. Next, Loveless argues that the trial court erred in sentencing him as a recidivist under OCGA § 17-10-7 (c) when one of his three prior offenses was the crime of simple possession of a controlled substance under OCGA § 16-13-30 (a). Again, we disagree.

At the outset, we note that the fundamental rules of statutory construction require us to "construe the statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage."[22] Put another way, when we consider the meaning of a statute, we must (1) "presume that the General Assembly meant what it said and said what it meant,"[23] and (2) "read the statutory text in its most natural and reasonable way, as an ordinary

[22] *State v. Mussman*, 289 Ga. 586, 588 (1) (713 SE2d 822) (2011) (punctuation omitted); *see also Martinez v. State*, 325 Ga. App. 267, 273 (2) (750 SE2d 504) (2013) ("[A]s with any question of statutory interpretation, we necessarily begin our analysis with familiar and binding canons of construction. Indeed, in considering the meaning of a statute, our charge as an appellate court is to 'presume that the General Assembly meant what it said and said what it meant.' And toward that end, we must afford the statutory text its plain and ordinary meaning, consider the text contextually, and read the text 'in its most natural and reasonable way, as an ordinary speaker of the English language would.' In sum, where the language of a statute is plain and susceptible of only one natural and reasonable construction, 'courts must construe the statute accordingly.'" (citations and punctuation omitted)).

[23] *Fed. Dep. Ins. Corp. v. Loudermilk*, 295 Ga. 579, 588 (2) (761 SE2d 332) (2014) (punctuation omitted); *see also Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013).

speaker of the English language would."[24] As our Supreme Court has recently explained,

> [i]n our search for the meaning of a particular statutory provision, we look not only to the words of that provision, but we consider its legal context as well. After all, context is a primary determinant of meaning. For context, we may look to the other provisions of the same statute, the structure and history of the whole statute, and the other law—constitutional, statutory, and common law alike—that forms the legal background of the statutory provision in question.[25]

---

[24] *Loudermilk*, 295 Ga. at 588 (2) (punctuation omitted); *see also Deal*, 294 Ga. at 172 (1) (a).

[25] *Loudermilk*, 295 Ga. at 588 (2) (punctuation omitted); *accord May v. State*, 295 Ga. 388, 391-92 (761 SE2d 38) (2014).

Thus, when we speak of discerning "the intent of the legislature"[26] (inadvisable as it may be to do so[27]), we are referring to interpreting the relevant statutory text within its contextual backdrop.[28]

Here, the relevant statute is OCGA § 17-10-7. The record reflects that, as recounted *supra*, Loveless was convicted of, *inter alia*, trafficking in methamphetamine under OCGA § 16-13-31 (e). And because Loveless had prior

---

[26] *Mussman*, 289 Ga. at 588 (1) (punctuation omitted).

[27] *See Malphurs v. State*, 336 Ga. App. 867, 871 (785 SE2d 414) (2016) ("But that is not how legislative intent or laws work. The General Assembly does not enact a general intention; it enacts statutes. Statutes have words, and words have meanings. It is those meanings that we interpret and apply, not some amorphous general intention."); *Day v. Floyd Cty. Bd. of Educ.*, 333 Ga. App. 144, 150-51 (775 SE2d 622) (2015) (Dillard, J., concurring) (rejecting majority's reliance on legislative history, and noting "I do not consider extratextual sources . . . in interpreting statutes . . . [and] categorically reject relying on legislative history in interpreting the statutes passed by our General Assembly . . . . As Georgians (and Americans), we are 'governed by laws, not by the intentions of legislators.' And as judges, we should only be concerned with what laws actually say, 'not by what the people who drafted the laws intended.' (footnotes omitted)). *See generally BellSouth Telecommunications, LLC v. Cobb County*, __ Ga. App. __ (802 SE2d 686, 695-97) (2017) (Dillard, P.J., concurring) (outlining reasons for generally disfavoring any discussion of "legislative intent" in the context of statutory interpretation).

[28] *See Loudermilk*, 295 Ga. at 588 (2) (looking to statutory text and context); *May*, 295 Ga. at 391-92 (same); *Martinez*, 325 Ga. App. at 273 (same).

16

convictions for possession of a controlled substance,[29] trafficking in methamphetamine,[30] and a federal charge of counterfeiting,[31] the trial court sentenced him as a recidivist under OCGA § 17-10-7 (a) *and* (c) when he was resentenced under OCGA § 16-13-31 (e), whereas the trial court had previously sentenced Loveless as a recidivist under OCGA § 17-10-7 (a) *only* when he was erroneously sentenced under OCGA § 16-13-30.

Loveless contends that because one of his prior convictions was that of simple possession under OCGA § 16-13-30 (a) that OCGA § 17-10-7 (b.1) applied and barred the trial court from sentencing him as a recidivist under OCGA § 17-10-7 (c). But as explained *supra*, OCGA § 17-10-7 (b.1) specifies that "[s]ubsections (a) and (c) of this Code section shall not apply to a second or any subsequent conviction for any violation of subsection (a), paragraph (1) of subsection (i), or subsection (j) of Code Section 16-13-30."

Because Loveless was convicted of violating OCGA § 16-13-31 (e) and, upon resentencing, was properly sentenced for a violation of same, OCGA § 17-10-7 (b.1)

---

[29] *See* OCGA § 16-13-30 (a).

[30] *See* OCGA § 16-13-31.

[31] *See* 18 USC § 472; *see also* Division 3 *supra*.

was not implicated, and the trial court was not limited in applying subsections (a) and (c) of that Code section.[32] Indeed, by the plain language of its terms, subsection (b.1) only applies to limit application of subsections (a) and (c) when a defendant is convicted of a "second or any subsequent . . . violation of subsection (a), paragraph (1) of subsection (i), or subsection (j) of Code Section 16-13-30." Here, the conviction for which Loveless was being sentenced was for a violation of OCGA § 16-13-31 (e), not a violation of OCGA § 16-13-30 (a), OCGA § 16-13-30 (i) (1), or OCGA § 16-13-30 (j). Thus, OCGA § 17-10-7 (b.1) was not implicated, and the trial court did not err by applying both OCGA § 17-10-7 (a) *and* (c) when resentencing Loveless under the proper Code section.

3. Finally, Loveless argues that the trial court erred in sentencing him as a recidivist under OCGA § 17-10-7 (c) when one of his three prior offenses was a federal charge of counterfeiting, which has no precise counterpart in Georgia law. Once again, we disagree.

---

[32] *Cf. Johnson v. State*, 335 Ga. App. 796, 800 (2) (783 SE2d 156) (2016) ("[A]s to his conviction for possession of cocaine under OCGA § 16-13-30 (a), following the explicit and plain terms of OCGA § 17-10-7 (b.1), [the appellant] could not be sentenced as a recidivist under OCGA § 17-10-7 (c) because one of the three prior felony convictions used in aggravation was also a conviction under OCGA § 16-13-30 (a).").

As previously noted, OCGA § 17-10-7 (c) applies to "any person who, after having been convicted under the laws of this state for three felonies or having been convicted under the laws of any other state or of the United States of three crimes which if committed within this state would be felonies, commits a felony within this state[.]" And the State has the burden of showing that any foreign convictions were for conduct which would be considered felonious under Georgia law.[33]

During Loveless's initial sentencing hearing, the State presented three certified convictions, including proof that Loveless pleaded guilty to a charge of federal counterfeiting under 18 USC § 472. At that hearing, Loveless objected to the State's use of the federal conviction, contending that he did not "know that these are felonious" due to downward-departure guidelines used in the federal system. But the trial court explained that the federal downward-departure guidelines did not affect "whether it's a misdemeanor or felony" and admitted the State's evidence relevant to the federal conviction. This was the only objection that Loveless made to the federal conviction at the first sentencing hearing.

---

[33] *Anderson v. State*, 337 Ga. App. 739, 744 (2) (788 SE2d 831) (2016); *Davis v. State*, 319 Ga. App. 501, 504 (2) (736 SE2d 160) (2012). *See generally Nordahl v. State*, Case No. A17A1360, at __ (2) (Ga. App. Feb. 26, 2018) (discussing the analysis employed in reaching this conclusion).

At the resentencing hearing, the State again asked that the Court apply not only OCGA § 17-10-7 (a) but also OCGA § 17-10-7 (c). As to the conviction for federal counterfeiting, Loveless argued that the elements of the counterfeiting conviction were unknown and that counterfeiting, on its face, is not a felony in Georgia. He further argued that "there are provisions that counterfeiting with an adequate factual basis could constitute a crime in the state of Georgia such as forgery, such as [f]alse [s]tatements. But we don't have any of that before us." The trial court requested to see the prior convictions that had been tendered and admitted at the previous sentencing hearing. The State then argued that Loveless had himself just admitted that the crime of counterfeiting can qualify as the felony of forgery under Georgia law. And after the trial court examined the exhibits, it ruled as follows: "The court, looking at the conviction and federal court [sic], finds it's clearly a [f]orgery and, therefore, it's clearly a felony under our law."

On appeal, Loveless contends that the trial court erred in accepting the federal counterfeiting conviction to sentence him under OCGA § 17-10-7 (c) because "there is no evidence in the record that establish[es] the elements and facts which constitute a felony in Georgia law." But the evidence in the record as to this conviction consists of the federal indictment from the United States District Court for the Northern

20

District of Georgia, a "criminal minute sheet" showing that Loveless entered into a negotiated guilty plea as to the charge of counterfeiting, Loveless's guilty plea and plea agreement, and a "minute sheet" showing the sentence that was imposed. The indictment reflects the factual basis for the charge of counterfeiting, which was that Loveless and three other individuals, "aided and abetted by one another, with the intent to defraud, did acquire, record, receive, and have in their control, custody, and possession, analog, digital, and electronic images of obligations of the United States, that is, Federal Reserve Notes[.]"

18 USC § 472 provides that

[w]hoever, with intent to defraud, passes, utters, publishes, or sells, or attempts to pass, utter, publish, or sell, or with like intent brings into the United States or keeps in possession or conceals any falsely made, forged, counterfeited, or altered obligation or other security of the United States, shall be fined under this title or imprisoned not more than 20 years, or both.

In Georgia, OCGA § 16-9-1 criminalizes forgery in the first degree when a person, with the intent to defraud,

knowingly makes, alters, or possesses any writing, other than a check, in a fictitious name or in such manner that the writing as made or altered purports to have been made by another person, at another time, with

21

different provisions, or by authority of one who did not give such authority and utters or delivers such writing.[34]

Additionally, forgery in the second degree is criminalized when a person, with the intent to defraud,

> knowingly makes, alters, or possesses any writing, other than a check, in a fictitious name or in such manner that the writing as made or altered purports to have been made by another person, at another time, with different provisions, or by authority of one who did not give such authority.[35]

Both forgery in the first and second degree are punished as felonies.[36]

As previously noted, at the resentencing hearing, Loveless admitted that federal counterfeiting can constitute the crime of forgery in Georgia. Indeed, we have held in a number of cases that a defendant who possesses counterfeit dollar bills commits the offense of forgery.[37] And the provisions of both 18 USC § 472 and Georgia's

---

[34] OCGA § 16-9-1 (b).

[35] OCGA § 16-9-1 (c).

[36] *See* OCGA § 16-9-2 (a), (b).

[37] *See Walsh v. State*, 283 Ga. App. 817, 818 (1) (642 SE2d 879) (2007) (holding that evidence was sufficient to sustain defendant's convictions for first- and second-degree forgery when he passed a counterfeit bill to a bartender and possessed a second counterfeit bill in his wallet, both of which "had physical characteristics

statute criminalizing forgery in the second degree would criminalize the conduct to which Loveless pleaded guilty in federal court, *i.e.*, aided and abetted by others, he possessed fraudulent "analog, digital, and electronic images of obligations of the United States, that is, Federal Reserve Notes," with an intent to defraud.[38]

---

inconsistent with genuine United States currency," which authorized the jury to conclude that "the bills were not genuine and that [the defendant] tendered one and possessed another for the purpose of defrauding the bar"); *Ebenezer v. State*, 191 Ga. App. 901, 901 (1) (393 SE2d 373) (1989 (affirming conviction for forgery based upon possession of counterfeit currency when "defendant's possession of the forged United States currency, his posting of the forged writings and his flight from law enforcement officers was sufficient to authorize the jury's finding, beyond a reasonable doubt, that defendant possessed the forged United States currency with the requisite intent to defraud"). *But see Nelson v. State*, 302 Ga. App. 583, 584-85 (1) (691 SE2d 363) (2010) (noting that forgery may be proved by circumstantial evidence and that the necessary intent to defraud can be shown by delivery or use of the writing, or by flight, and reversing conviction for forgery when there was no evidence of intent to use counterfeit bill when it was discovered in an inventory of the defendant's belongings while booking him into jail on charges of child molestation).

[38] *See Anderson v. State*, 261 Ga. App. 456, 463 (5) (582 SE2d 575) (2003) (comparing language contained in information attached to certified copy of conviction from Missouri to conclude that the activity for which defendant was there convicted of "first degree robbery, armed criminal action, kidnapping, and tampering in the first degree" would have also constituted the felony of armed robbery in Georgia); *see also Bettis v. State*, 329 Ga. App. 13, 15 (1) (763 SE2d 366) (2014) (noting that in the context of forgery, "[b]oth knowledge and intent to defraud may be proven by circumstantial evidence" (punctuation omitted)). *Cf. Lewis v. State*, 263 Ga. App. 98, 99 (2) (587 SE2d 245) (2003) (vacating and remanding for resentencing when documents from foreign jurisdiction provided no details as to the conduct that gave rise to aggravated assault conviction because foreign jurisdiction permitted convictions for aggravated assault in many different manners, one of which would not

Accordingly, the trial court did not err by considering Loveless's federal conviction for counterfeiting when it resentenced him as a recidivist under OCGA § 17-10-7 (c).

For all these reasons, we affirm.

*Judgment affirmed. Ray and Self, JJ., concur.*

---

necessarily have been felonious under Georgia law); *Wallace v. State*, 175 Ga. App. 685, 687 (6) (333 SE2d 874) (1985) (reversing sentence when the Georgia offenses most closely related to the federal offense of receiving, possessing, and concealing explosives, knowing they had been stolen, contained additional elements that were not required by the federal statute).