**FOURTH DIVISION**
**DILLARD, C. J.,**
**DOYLE, P. J., and MERCIER, J.**

**NOTICE:** Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 23, 2018**

# In the Court of Appeals of Georgia

A18A0077. THE STATE v. FOWLE.

MERCIER, Judge.

Shantel Fowle was indicted for misdemeanor possession of marijuana and crossing the guard lines[1] of a county correctional institution with drugs, in violation of OCGA § 42-5-15. Fowle moved to dismiss the charge brought under OCGA § 42-5-15, arguing that he could not be found guilty as a matter of law and that the prosecution violated his constitutional protection against self-incrimination. The trial court granted the motion, and the State appeals. See OCGA § 5-7-1 (a) (1). For reasons that follow, we reverse.

---

[1] Guard lines are "established by the warden, superintendent, or his designated representative in charge at the various state or county correctional institutions in the same manner that land lines are established." OCGA § 42-5-14.

On appeal from an order dismissing an indictment, "we review the trial court's interpretations of law and application of the law to the facts de novo." *State v. Scott*, 344 Ga. App. 744 (811 SE2d 457) (2018) (footnote and punctuation omitted). The relevant facts are not in dispute. On February 20, 2016, Fowle was a passenger in a vehicle that police pulled over for a traffic violation. The officer conducting the traffic stop ran Fowle's name through the police computer and discovered an outstanding misdemeanor arrest warrant. He arrested Fowle and searched him, but found no contraband.

The officer, who purportedly smelled marijuana at the scene, informed Fowle that if police discovered marijuana on him after he entered the county jail, he would be charged with a felony. Fowle denied that he had any drugs,[2] and the officer transported him to the Fulton County Jail. After Fowle entered the jail, the officer located a small amount of marijuana on Fowle's person.

---

[2] Although the record contains no testimony from the arresting officer, the trial court concluded that the officer failed to advise Fowle of his right to remain silent under *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966). Regardless of the admissibility of Fowle's denial, however, it is clear that Fowle did not reveal any contraband to the officer.

In addition to charging Fowle with misdemeanor possession of the marijuana, the State charged him with violating OCGA § 42-5-15 by bringing drugs into the jail, a felony offense. Pursuant to that provision:

> It shall be unlawful for any person to come inside the guard lines established at any state or county correctional institution with . . . any intoxicating liquor, amphetamines, biphetamines, or any other hallucinogenic or other drugs, without the knowledge or consent of the warden, superintendent, or his or her designated representative.

OCGA § 42-5-15 (a).

Fowle moved to dismiss the OCGA § 42-5-15 charge, asserting that (1) he did not voluntarily bring drugs into the jail, and (2) any prosecution under the statute would violate his constitutional privilege against self-incrimination.[3] The trial court granted Fowle's motion and dismissed the charge. This appeal followed.

1. In its dismissal order, the trial court found that Fowle lacked the criminal act and intent necessary to violate OCGA § 42-5-15 because he did not voluntarily enter the Fulton County Jail. We disagree.

---

[3] Neither the parties nor the trial court addressed whether the Fulton County Jail constitutes a county correctional institution for purposes of OCGA § 42-5-15. We thus do not consider the issue.

3

Without dispute, Fowle did not choose to cross the jail's guard lines; the arresting officer brought him into the facility. Nothing in the language of OCGA § 42-5-15, however, requires a voluntary entry into the jail. On the contrary, the statute makes it unlawful for *any* person to enter a state or county correctional institution with drugs, not just those persons who come in voluntarily. OCGA § 42-5-15 (a).

Our fundamental rules of statutory interpretation require us to "construe the statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage." *Loveless v. State*, 344 Ga. App. 716, 723 (2) (812 SE2d 42) (2018) (footnote and punctuation omitted). Ultimately, we must "(1) presume that the General Assembly meant what it said and said what it meant, and (2) read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would." Id. at 724 (2) (footnotes and punctuation omitted). As explained by our Supreme Court:

> [i]n our search for the meaning of a particular statutory provision, we look not only to the words of that provision, but we consider its legal context as well. After all, context is a primary determinant of meaning. For context, we may look to the other provisions of the same statute, the structure and history of the whole statute, and the other law – constitutional, statutory, and common law alike – that forms the legal background of the statutory provision in question.

4

Id. (footnote omitted) (quoting *FDIC v. Loudermilk*, 295 Ga. 579, 588 (2) (761 SE2d 332) (2014)).

Given the clear terms of OCGA § 42-5-15, we find no indication that the legislature sought to exclude from the statute a key class of persons – inmates, who presumably are not incarcerated voluntarily. Moreover, the statute does not criminalize entering a correctional facility. It forbids crossing the guard lines *with drugs* without the warden's knowledge or consent. Although the arresting officer required Fowle to cross those lines, the evidence supports the conclusion that Fowle elected to keep marijuana hidden on his person, despite the officer's warning. Under these circumstances, a jury could find that Fowle intentionally came inside the guard lines with marijuana, thus satisfying the criminal act and intent requirements of OCGA § 42-5-15. See OCGA § 16-2-1 (a) (A "crime" is "a violation of a statute of this state in which there is a joint operation of an act or omission to act and intention or criminal negligence.").

Like the courts of several other states that have interpreted similar statutes, we conclude that a defendant cannot avoid prosecution under OCGA § 42-5-15 simply because he or she did not voluntarily enter the correctional institution. See *State v. Alvarado*, 200 P3d 1037, 1041-1043 (Ariz. App. 2008) (rejecting argument that

arrestee charged with violating statute similar to OCGA § 42-5-15 lacked necessary action and intent because he did not voluntarily enter the jail); *Taylor v. Commonwealth*, 313 SW3d 563, 566 (Ky. 2010) ("[A]ppellate courts in other jurisdictions have opined that a person who knowingly takes contraband into a detention facility does so voluntarily, even when the person is taken in involuntarily.") (footnote omitted); *Herron v. Commonwealth*, 688 SE2d 901, 905 (Va. App. 2010) ("[T]he majority of other jurisdictions find no more than entry into jail knowing that one is carrying contraband is required by the plain terms of the governing statutes.") (citations and punctuation omitted).[4] The trial court erred in determining otherwise.

2. Alternatively, the trial court found that the State improperly sought to "punish[] Fowle with a felony charge for a misdemeanor crime solely for exercising his constitutionally guaranteed right not to incriminate himself." According to the trial court, Fowle was presented with the "unconstitutional choice" of incriminating himself

---

[4] Some jurisdictions have reached the opposite conclusion, finding that an arrested individual who enters a jail with contraband on his or her person does not voluntarily violate a prison contraband statute such as OCGA § 42-5-15. See, e.g., *State v. Cole*, 164 P3d 1024 (N.M. App. 2007); *State v. Tippetts*, 43 P3d 455 (Ore. App. 2002). The trial court's dismissal order relied heavily on the *Tippetts* decision, in particular. Given the language of OCGA § 42-5-15, the rules of statutory construction, and our analysis of competing authority, we do not find *Tippetts* or similar cases persuasive.

6

by confessing to marijuana possession or subjecting himself to felony prosecution pursuant to OCGA § 42-5-15. It thus concluded that the prosecution infringed upon Fowle's constitutional protection against self-incrimination.[5]

Under the Fifth Amendment to the United States Constitution, no person "shall be compelled in any criminal case to be a witness against himself." U. S. Const., Amend. V. This protection "reaches an accused's communications, whatever form they might take, and the compulsion of responses which are also communications." *Schmerber v. California*, 384 U. S. 757, 763-764 (II) (86 SCt 1826, 16 LE2d 908) (1966) (citation omitted). Georgia's Constitution similarly provides that "[n]o person shall be compelled to give testimony tending in any manner to be self-incriminating." Ga. Const. of 1983, Art. I, Sec. I, Par. XVI. The state protection has been construed more broadly than the federal provision, extending not only to compelled communications, but also to compelled acts by the accused that generate both "oral

---

[5] We initially transferred this case to the Supreme Court of Georgia on the ground that the appellate issues implicated the constitutionality of OCGA § 42-5-15. The Supreme Court returned the appeal to this Court, explaining that the threshold issue is not the statute's constitutionality, but whether "the officer who processed appellant into the jail required him to make an unconstitutional choice to incriminate himself by answering the officer's questions about whether he had drugs on his person."

and real evidence." See *Fortune v. State*, 300 Ga. App. 550, 556 (2) (b) (685 SE2d 46) (2009); see also *Olevik v. State*, 302 Ga. 228, 243 (2) (c) (iii) (806 SE2d 505) (2017). "[W]hether a defendant is compelled to provide self-incriminating evidence in violation of [the Georgia Constitution] is determined under the totality of the circumstances."*Olevik*, supra at 251 (3) (b).

No constitutional violation occurred here. Fowle was not compelled to make an incriminating statement or provide incriminating evidence. He explicitly elected *not* to turn the marijuana over to police. And although he claims that the arresting officer presented him with the untenable choice of incriminating himself or facing a felony charge under OCGA § 42-5-15, the record demonstrates no coercion or force. The officer merely apprised Fowle of the legal consequences he potentially faced by bringing marijuana into the jail, information that does not constitute a threat or coercion. See *Carswell v. State*, 268 Ga. 531, 533 (2)(491 SE2d 343) (1997) (officers did not threaten defendant during police interrogation "by telling him that he could be prosecuted for the death penalty, but rather simply stated the potential legal consequences of [his] actions"); *Brewer v. State*, 312 Ga. App. 397, 399 (718 SE2d 612) (2011) (police statement that accused would be arrested if he refused to talk to officers "does not amount to coercion . . . [because] [s]uch statements are in the

nature of a mere truism and simply made [the accused] aware of potential legal consequences") (footnote and punctuation omitted).

In rejecting a similar challenge to Arizona's version of OCGA § 42-5-15, the Arizona Court of Appeals noted:

> That defendant chose not to disclose that he possessed an additional amount of marijuana on his person does not somehow absolve him of responsibility for his actions on the theory that providing him an opportunity to choose between admitting to possession of the marijuana and being charged with introducing that substance into the jail violates the self-incrimination clause of the Fifth Amendment. Sometimes the choices faced by a defendant may have the effect of discouraging the exercise of constitutional rights but that does not mean such choices are prohibited.

*Alvarado*, supra at 1042 (citation and punctuation omitted).

The State did not create the difficult dilemma confronting Fowle upon his arrest and entry into the jail. The situation stemmed from his possession of marijuana. He was not compelled to incriminate himself through words or action or forced by police to bring drugs into the jail. Rather, he had the choice of relinquishing the marijuana or keeping it hidden. Because the circumstances did not implicate federal or state constitutional concerns, the trial court erred in finding that prosecution under OCGA § 42-5-15 violated Fowle's right against self-incrimination. See id.; *Taylor*, supra ("[A]

number of courts have rejected the notion that there is a right to be protected from having to make difficult choices regarding whether to invoke the Fifth Amendment right against self-incrimination.") (footnote omitted); *Herron*, supra at 907 ("Appellant was not presented with a 'Hobson's choice' but rather with a 'dilemma'" that did not raise constitutional concerns).

3. Finally, the trial court determined that prosecuting Fowle under OCGA § 42-5-15 would "violate both public policy and legislative intent" by elevating misdemeanor possession of marijuana to a felony offense. But the State did not convert a misdemeanor offense into a felony. It alleged that Fowle committed a new offense by bringing drugs into the Fulton County Jail. And although simple drug possession may only be a misdemeanor, the General Assembly has determined that anyone who crosses the guard lines of a correctional institution with drugs without the warden's consent or knowledge faces felony punishment. See OCGA § 42-5-15 (b) ("*Any person* who violates this Code section shall be guilty of a felony.") (emphasis supplied).

The trial court's suggestion that OCGA § 42-5-15 should not apply to individuals who would otherwise be misdemeanor offenders "creates an unreasonable

exception from liability, which is not supported by the language . . . of the statute." Id.

at 837 (2) (b). Accordingly, the trial court erred in dismissing the charge.

*Judgment reversed. Dillard, C. J., and Doyle, P. J., concur.*