# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 46781

STATE OF IDAHO,

    Plaintiff-Respondent,

v.

NICOLE LYN GNEITING,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)

Boise, May 2020 Term

Opinion Filed: July 15, 2020

Melanie Gagnepain, Clerk

---

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bonneville County. Bruce L. Pickett, District Judge.

The district court's judgment of conviction is <u>affirmed</u>.

Eric Don Fredericksen, State Appellate Public Defender, Boise, for Appellant. Sally J. Cooley argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for Respondent. John C. McKinney argued.

---

BURDICK, Chief Justice.

Nicole Lyn Gneiting appeals her conviction for possession of major contraband within a correctional facility under Idaho Code section 18-2510(3). Gneiting was convicted by a Bonneville County jury after a four-day trial. On appeal, Gneiting argues that the State failed to present sufficient evidence to prove beyond a reasonable doubt that she knowingly possessed contraband within a correctional facility because she did not enter the county jail voluntarily.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Early in the morning on January 20, 2018, Idaho Falls Police Officer Kevin Goms was working the graveyard shift when he responded to a potential burglary in progress at a nearby motel. As he pulled up to the motel's parking lot, Officer Goms noticed a man standing near the front of a vehicle with its alarm going off. He also noticed a woman, who was later identified as

1

Gneiting, in the back seat of the car. Officer Goms and another officer, Officer Blaine Reed, who arrived at around the same time, approached the vehicle and began speaking with the man.

Shortly after the first two officers arrived, a third officer, Officer Jamie Nunnelly, arrived on the scene and began speaking with Gneiting. According to Officer Nunnelly, Gneiting informed her that she owned the car in question and that she was not staying in the motel but had been visiting a friend who was staying there. As she was speaking to Gneiting, Officer Nunnelly noticed a cylindrical object inside Gneiting's pants and asked her to remove it. Gneiting pulled the object, which was a flashlight, out of her pants.

With Gneiting's permission, Officer Nunnelly patted Gneiting down and felt a "hard, bulgy object" on the inside of her upper thigh. Gneiting claimed the object was a sanitary napkin or "pad" and that she was menstruating and was uncomfortable. Gneiting began adjusting her pants and Officer Nunnelly instructed her to stop. Gneiting did not stop "messing with her pants" and began yelling at the man talking to one of the other officers. Because she would not stop adjusting her pants and yelling at the man, Officer Nunnelly put Gneiting in handcuffs and placed her in the back of her patrol car.

The man eventually gave the officers a key to one of the motel rooms. The officers went to the motel room and spoke with a woman who was renting the room, as well as the room next door, and arrested her on an outstanding warrant and for providing false information to law enforcement.

The motel owner asked the officers to remove the personal items from both rooms since the woman was being arrested. The officers searched both rooms and found a purse containing two bags of what they believed to be marijuana, a pipe, a number of Xanax and Adderall pills, and Gneiting's debit card, among several other items. After advising Gneiting of her rights and asking her about the contents of the purse, Officer Nunnelly placed her under arrest for possession of marijuana, possession of paraphernalia, and possession of a controlled substance (the prescription medications). Strongly believing that Gneiting had illegal contraband on her person, Officer Nunnelly asked Gneiting multiple times whether she had anything illegal on her and warned her that if she took illegal items into the jail, she would receive an additional charge. Each time she was warned, Gneiting denied having anything illegal on her person.

Upon arriving at the county jail, Officer Nunnelly handed Gneiting over to the sergeant on duty and informed the sergeant that she had felt an object in Gneiting's pants and believed it

2

to be narcotics. The sergeant asked Gneiting if she had anything illegal on her and Gneiting said that she did not. After several unsuccessful attempts to get Gneiting to willingly submit to a strip search, the sergeant called for the assistance of another female officer and together they strip searched Gneiting, retrieving a white paper envelope from between her legs. The envelope contained three plastic bags that were later determined to contain a combined total of 31.41 grams of methamphetamine.

The State charged Gneiting with felony possession of a controlled substance (Adderall), felony trafficking in methamphetamine (more than 28 grams but less than 200 grams), felony possession of certain articles (major contraband) within a correctional facility, misdemeanor possession of marijuana, misdemeanor possession of a controlled substance (Xanax), and misdemeanor possession of drug paraphernalia. After a four-day trial, the jury convicted Gneiting of trafficking in methamphetamine, possession of certain articles within a correctional facility, possession of a controlled substance (Xanax), and possession of drug paraphernalia.[1] The district court sentenced Gneiting to a 13-year term of imprisonment with three years fixed for trafficking in methamphetamine and a two-year term with one year fixed for possession of certain articles within a correctional facility, to run consecutively to the 13-year term. She was sentenced to 30 days' confinement on the two misdemeanor counts, to run concurrently with the 13-year term. After Gneiting filed a motion requesting leniency, the district court partially granted the motion, reducing the fixed portion of her sentence from four years to three-and-a-half years.

Gneiting timely appealed from the district court's judgment of conviction.

## II.     ISSUE ON APPEAL

Was there substantial evidence upon which a rational trier of fact could convict Gneiting of possessing, or attempting to possess, major contraband within a correctional facility?

## III.     STANDARD OF REVIEW

A judgment of conviction entered upon a jury verdict will be upheld by this Court so long as there exists "substantial evidence upon which a rational trier of fact could conclude that the prosecution proved all essential elements of the crime beyond a reasonable doubt." *State v. Kralovec*, 161 Idaho 569, 572, 388 P.3d 583, 586 (2017) (quoting *State v. Severson*, 147 Idaho

---

[1] The felony possession of a controlled substance (Adderall) charge was dismissed prior to trial upon the State's motion. The district court granted Gneiting's motion for a judgment of acquittal as to the possession of marijuana charge.

694, 712, 215 P.3d 414, 432 (2009)). "Evidence is substantial if a 'reasonable trier of fact would accept it and rely upon it in determining whether a disputed point of fact has been proven.'" *Severson*, 147 Idaho at 712, 215 P.3d at 432 (quoting *State v. Mitchell*, 130 Idaho 134, 135, 937 P.2d 960, 961 (Ct. App. 1997)). On appeal of a judgment of conviction, this Court "view[s] the evidence in the light most favorable to the prosecution in determining whether substantial evidence exists." *Id.* (quoting *State v. Sheahan*, 139 Idaho 267, 286, 77 P.3d 956, 975 (2003)). This Court "will not substitute [its] own judgment for that of the jury on matters such as the credibility of witnesses, the weight to be given to certain evidence, and 'the reasonable inferences to be drawn from the evidence.'" *Id.* Thus, "substantial evidence may exist even when the evidence presented is solely circumstantial or when there is conflicting evidence." *Id.*

The interpretation of a statute is a question of law, which this Court reviews de novo. *State v. Schulz*, 151 Idaho 863, 865, 264 P.3d 970, 972 (2011).

## IV.    ANALYSIS

### A. There was substantial evidence upon which a rational trier of fact could convict Gneiting of possessing, or attempting to possess, major contraband within a correctional facility.

Gneiting argues that the State failed to present substantial evidence upon which a rational trier of fact could have convicted her of possessing major contraband within a correctional facility. Specifically, Gneiting contends that there is a voluntariness component inherent to the *actus reus* of every crime, and that she did not voluntarily possess methamphetamine in the county jail when she was brought there against her will. The State argues that it presented substantial evidence at trial, sufficient to show that Gneiting voluntarily introduced contraband into a correctional facility when she was informed that bringing contraband into the jail would result in an additional charge and was given multiple opportunities to turn over the contraband before being taken to jail. In other words, the State argues that Gneiting's voluntary act of maintaining possession of the methamphetamine, despite being afforded several opportunities to turn it over to police officers before being involuntarily transported to jail, was sufficient to satisfy the requirement that Gneiting's conduct be voluntary.

Idaho Code section 18-2510(3) provides in its entirety that:

> (3) No person including a prisoner, except as authorized by law or with permission of the facility head, shall knowingly:

4

(a) Introduce, or attempt to introduce, major contraband into a correctional facility or the grounds of a correctional facility; or

(b) Convey, or attempt to convey, major contraband to a prisoner confined in a correctional facility; or

(c) Possess, or attempt to possess, major contraband within a correctional facility; or

(d) Receive, obtain or remove, or attempt to receive, obtain or remove, major contraband from a correctional facility.

I.C. § 18-2510(3). Gneiting was convicted under subsection (c) of this statute for possessing, or attempting to possess, major contraband (methamphetamine) within a correctional facility.[2]

Although voluntariness is not an express statutory element of the offense, Idaho Code section 18-114 provides that, "[i]n every crime or public offense there must exist a union, or joint operation, of act and intent . . . ." I.C. § 18-114. This Court explained in *State v. Taylor* that "intent is a necessary ingredient of every crime . . . in the sense that the act must have been committed by the defendant voluntarily, and not under duress or acting under compulsion of superior force." 59 Idaho 724, 738, 87 P.2d 454, 461 (1939) (discussing the predecessor statute

---

[2] As an aside, the Court notes that while Gneiting was charged and convicted under Idaho Code section 18-2510(3)(c) for knowingly possessing, or attempting to possess, major contraband within a correctional facility, the district court gave a jury instruction that conflates section 2510(3)(c) with introduction of contraband into a correctional facility under Idaho Code section 18-2510(3)(a). The instruction provided as follows:

> In order for the defendant to be guilty of Possession of Certain Articles within a Correctional Facility, the state must prove each of the following:
>
> 1.  On or about January 20, 2018
> 2.  in the state of Idaho
> 3.  the defendant Nicole Lyn Gneiting knowingly *introduced or attempted to introduce* major contraband within a correctional facility.
>
> If any of the above has not been proven beyond a reasonable doubt, you must find defendant not guilty. If each of the above has been proven beyond a reasonable doubt, then you must find the defendant guilty.

(emphasis added). This instruction was erroneous insomuch as it substitutes the words "introduced or attempted to introduce" for "possess or attempt to possess" as an element of the offense. *See* I.C. § 18-2510(3)(c). Gneiting did not object to the erroneous instruction below. On appeal, neither party addresses the issue and both parties have switched interchangeably between "possession" and "introduction" of major contraband in their arguments.

We do not think the instructional error rises to the level of a due process violation that we would address sua sponte. Under these circumstances, to convict Gnieting of *introducing* contraband into a correctional facility, the jury would have had to find that Gnieting possessed or attempted to possess such contraband within the correctional facility. Having been instructed as to introduction, and having found beyond a reasonable doubt that the introduction element was satisfied, no rational jury could have found that the State failed to prove possession. *See generally State v. Perry*, 150 Idaho 209, 224, 245 P.3d 961, 976 (2008) (explaining that an instructional error is harmless where no rational jury could conclude that the State failed to prove an omitted element of an offense). As such, the instructional error is harmless. *Id.*

5

to Idaho Code section 18-114 which also required a "union or joint operation of act and intent") (quoting *State v. Henzell*, 17 Idaho 725, 734, 107 P. 67, 70 (1910)). Therefore, the requirement that an individual's actions be voluntary is inherently required for a conviction under Idaho Code section 18-2510(3)(c).

We have not yet addressed whether an arrestee who involuntarily enters a correctional facility has nonetheless voluntarily possessed contraband within the facility when she makes the decision to continue to conceal drugs on her person after being warned that doing so will constitute a separate offense. The majority of states have concluded that an arrestee, having been advised that bringing an illegal substance into a correctional facility will constitute a separate offense, makes a voluntary choice to possess the contraband within the correctional facility when she continues to conceal or, fails to disclose, the contraband on her person. *See Barrera v. State*, 403 P.3d 1025, 1028–29 (Wyo. 2017) (describing the majority view and interpreting a Wyoming statute as consistent with that view).

The Wyoming Supreme Court's decision in *Barrera v. State* is representative of the majority view. 403 P.3d 1025. There, officers arrested a man for violating Wyoming's open container statute and searched him to a limited extent incident to that arrest. *Id.* at 1027. The officers warned him twice that he would be more thoroughly searched at jail and would receive additional charges if there were drugs on him and he brought them into the jail. *Id.* The man said he did not have anything on him both times that he was warned. *Id.* While transporting the man to jail, one of the officers again warned him of the consequences he would face if he introduced drugs into the jail. *Id.* The man again responded that he had nothing on him. *Id.* Finally, before entering the jail, the officers showed and read to the man a sign posted outside warning that he would be charged with a felony if he brought illegal substances into the jail. *Id.* They asked him if he had any such items on him and the man said, "No." *Id.* When the man was searched in the jail's booking area, officers found a small bag of methamphetamine in the watch pocket of the man's pants. *Id.* at 1028. The man was subsequently charged and convicted of a felony for introducing drugs into the jail. *Id.*

On appeal, the defendant argued that he did not take the methamphetamine into the jail voluntarily because he had been arrested and transported to the jail involuntarily. *Id.* The Wyoming Court conducted a brief survey of the law in other states that have decided the issue before adopting the majority view, concluding that introduction of a prohibited substance into a

jail is voluntary so long as it was the product of choice. *See id.* at 1028–29. The Court reasoned that to hold otherwise would be to unjustifiably read a "voluntary presence in a jail" element into the statute and would essentially create an exception for all arrestees and inmates because their presence in state correctional facilities is rarely voluntary. *Id.* at 1029.

A number of other states have taken a similar approach. *See, e.g.*, *State v. Cargile*, 916 N.E.2d 775, 777 (Ohio 2009) ("He was made to go into the detention facility, but he did not have to take the drugs with him."); *Taylor v. Commonwealth*, 313 S.W.3d 563, 565–66 (Ky. 2010) (holding that a man voluntarily brought contraband into a correctional facility despite his presence in the facility being involuntary); *Brown v. State*, 89 S.W.3d 630, 633 (Tex. Crim. App. 2002) (en banc) (bringing marijuana into a jail after being told about the potential consequences was a voluntary act because it was not accidental); *State v. Alvarado*, 200 P.3d 1037, 1042 (Ariz. Ct. App. 2008) (distinguishing the requirement that the *actus reus* of an offense be voluntary from the *mens rea* required for the offense and finding that both were met, despite the defendant's presence in a correctional facility being involuntary); *People v. Low*, 232 P.3d 635, 644 (Cal. 2010) (upholding a conviction for introduction of contraband where the defendant had "a clear opportunity to avoid [bringing the contraband inside] by voluntarily relinquishing the forbidden object . . . before entering the premises."); *State v. Barnes*, 747 S.E.2d 912, 920 (N.C. Ct. App. 2013) ("[W]hile guilt of an offense stemming from possession of a controlled substance in a confinement facility does require the defendant to commit a voluntary act, the necessary voluntary act occurs when the defendant knowingly possesses the controlled substance."); *State v. Winsor*, 110 S.W.3d 882, 887 (Mo. Ct. App. 2003) ("Whether Appellant's presence on the county jail's premises was voluntary or against his will is irrelevant for purposes of determining whether he committed the offense."); *Herron v. Commonwealth*, 688 S.E.2d 901, 906 (Va. Ct. App. 2010) (holding that defendant's act of taking drugs into a jail was voluntary where the defendant "chose to conceal drugs on his person and then failed to disclose the drugs after being advised of the consequences of bringing drugs into the jail."); *State v. Canas*, 597 N.W.2d 488, 496 (Iowa 1999) ("[T]he defendant . . . had the option of disclosing the presence of the drugs concealed on his person before he entered the jail and became guilty of the additional offense of introducing controlled substances into a detention facility."), *abrogated on other grounds by State v. Turner*, 630 N.W.2d 601, 606 n.2 (Iowa 2001).

Gneiting would have us reject the reasoning adopted by the majority of courts and argues that we should instead adopt the approach taken in Oregon and Washington. *See State v. Tippetts*, 43 P.3d 455 (Or. Ct. App. 2002); *State v. Eaton*, 177 P.3d 157 (Wash. 2008). She contends that these states have held that an arrestee who is involuntarily transported to a correctional facility cannot be said to have voluntarily introduced contraband into the facility. However, in our view, *State v. Tippetts* and *State v. Eaton* can be harmonized with the approach taken by the majority of jurisdictions because the facts in those cases are distinguishable.

In *Tippetts*, the Oregon Court of Appeals explained that for an act to be voluntary it must involve a conscious choice or bodily movement by the defendant. 43 P.3d at 456–58, 456 n.3. There, police officers entered the defendant's house pursuant to a search warrant and observed him running towards the back of the house. 43 P.3d at 456. The officers caught and detained the defendant, gave him a *Miranda* warning, and searched him, finding nothing. *Id.* The officers subsequently searched the house pursuant to the search warrant, finding methamphetamine and a weapon. *Id.* After finding the contraband in the house, the officers placed the defendant under formal arrest and transported him to the county jail, where they turned him over to another officer. *Id.* Before searching the defendant, the officer asked him whether he had "any knives, needles, or drugs on him that he was bringing into the jail." *Id.* A search of the defendant revealed a small bag of marijuana in his pocket. *Id.* He was subsequently charged and convicted of "supplying contraband."[3] *Id.* On appeal, the defendant argued that he did not voluntarily bring the marijuana into the jail because he was brought there against his will. *Id.* The State argued that so long as the defendant was aware of the marijuana on his person when he was taken to jail, then he had voluntarily brought it into the jail. *Id.* at 457. The Oregon Court of Appeals reversed, reasoning that "a voluntary act requires something more than awareness." *Id.* at 458. Instead, the Court explained, voluntariness requires "an ability to choose which course to take-*i.e.,* an ability to choose whether to commit the act that gives rise to criminal liability." *Id*. Because the State in *Tippetts* did not argue that the defendant had made a conscious choice to continue to possess the drugs after having been asked about them and having had the chance to get rid of them, the Court reasoned that there was no basis for upholding the conviction. *Id.* at 457 n.3, 460.

---

[3] Under the Oregon statute, a person commits the offense of supplying contraband if "the person knowingly introduces any contraband into a correctional facility, youth correction facility or state hospital." *Id.* (quoting ORS 162.185(1)(a)).

Similarly, in *Eaton*, the defendant was arrested for driving under the influence and transported to the local county jail. 177 P.3d at 157. When he was searched at the jail, police found a plastic bag containing methamphetamine taped to the top of his sock. *Id*. The defendant was subsequently charged and convicted of possession of methamphetamine. *Id.* at 157–58. At sentencing, the trial court applied a sentence enhancement statute that prohibited the possession of a controlled substance within a correctional facility. *Id.* at 158–59. The Washington Supreme Court reversed the sentence enhancement, relying on the rationale from *Tippetts*, and reasoning that the defendant "did not bring the methamphetamine into the county jail; a police officer brought [the man] and the methamphetamine into the county jail." *Id.* at 163–64. However, unlike in *Tippetts*, nothing in *Eaton* suggests that the defendant was asked whether he had contraband on him or was warned that bringing contraband into the jail could result in a sentence enhancement.

In our view, *Tippetts* and *Eaton* are distinguishable from the majority view, and from the facts of the present case. Gneiting was given multiple chances to choose between turning over the contraband or taking it with her into the jail. Had the State in *Tippetts* argued that the defendant made a conscious choice to maintain possession of the drugs, the result may have been different. Unlike the facts of this case, the defendant in *Eaton* was not given the opportunity to turn over the contraband before being searched at the jail.

The majority view is the only view consistent with the plain language of Idaho Code section 18-2510(3). By its own language, the statute applies to prisoners. I.C. § 18-2510(3) (beginning with "No person including a prisoner . . . ."). A prisoner's presence in a correctional facility is, by definition, involuntary. Under the view advanced by Gneiting, a prisoner could not be convicted of possessing contraband within a correctional facility because he could never be found to have acted voluntarily. To adopt Gneiting's view would be to read the words "including a prisoner" out of the statute altogether. It would be inappropriate to read a "voluntary presence in a correctional facility" element into the statute when its plain language explicitly applies to prisoners, whose presence within a correctional facility is not voluntary. Accordingly, we adopt the majority view and hold that an arrestee acts voluntarily when they are given an opportunity to give up any contraband before being taken into a correctional facility but choose to continue to possess the contraband.

Here, Gneiting's presence in the county jail was no doubt involuntary. She was arrested and transported to the jail against her will. However, Gneiting's possession of methamphetamine within the jail was nonetheless voluntary because she made the choice to continue possessing it after being given multiple opportunities to rid herself of it. Like the defendant in *Barrera*, Gneiting was asked several times whether she had anything illegal on her and was warned that if she brought contraband into the jail she could be charged with a separate offense. Each time Gneiting denied having anything on her. Upon arriving at the jail, she was given one last opportunity to turn over any contraband, but she again denied that she was carrying anything. Therefore, Gneiting was offered the choice between giving up the methamphetamine or continuing to conceal it multiple times before she was strip searched inside the jail. She voluntarily chose to possess the methamphetamine within the jail.

Finally, Gneiting argues that the facts of this case did not present her with "a true voluntary choice," because it was a choice between confessing to the possession of contraband or exercising her Fifth Amendment right against self-incrimination by remaining silent, but ultimately being charged under Idaho Code section 18-2510(3).

Several of the majority view courts that have addressed this question have determined that such a choice, though difficult, does not violate a defendant's Fifth Amendment right against self-incrimination. *See, e.g.*, *Canas*, 597 N.W.2d at 496 ("The defendant contends that to require him to admit his possession of the drugs would have impermissibly burdened his Fifth Amendment right to remain silent. We disagree. The criminal process includes many situations which require a defendant to make difficult judgments regarding which course to follow . . . Sometimes the choices faced by a defendant may have the effect of discouraging the exercise of constitutional rights but that does not mean such choices are prohibited."); *Cargile*, 916 N.E.2d at 777–78 ("The constitutional right to remain silent does not confer upon a defendant the privilege to lie, or the right to be protected from having to make difficult choices regarding whether to invoke the right to remain silent[.]") (internal citations omitted). The Kentucky Supreme Court's reasoning in *Taylor* is illustrative of this point:

> Taylor also asserts that he was not free to, nor could he have, disposed of the contraband before he entered the facility because to do so would have incriminated him in violation of his Fifth Amendment rights. Taylor had a choice because of his knowing and voluntary possession of marijuana: he could waive his Fifth Amendment right and not face the promoting contraband charge,

10

> or he could not waive his Fifth Amendment right and face a separate (and in this case, a more serious) charge if caught. His conscious choice was a gamble, and he lost. The Fifth Amendment does not entitle Taylor to a pass, or convert his voluntary illegal action of possession to an involuntary action when he is involuntarily taken into the facility. Asserting his right to not incriminate himself does not prevent the further investigation, nor the use of the fruits of that investigation. Likewise, a number of courts have rejected the notion that there is a right to be protected from having to make difficult choices regarding whether to invoke the Fifth Amendment right against self-incrimination.

313 S.W.3d at 566 (footnote omitted).

We agree that having to make a difficult choice regarding whether to invoke the right to remain silent does not violate the Fifth Amendment. *See State v. Payne*, 146 Idaho 548, 199 P.3d 123 (2008) (explaining that the state can "constitutionally condition a defendant's decision to present psychological evidence during the guilt phase of his trial on his waiving constitutional rights"). "The criminal process, like the rest of the legal system, is replete with situations requiring the making of difficult judgments as to which course to follow." *Id.* (quoting *Bonin v. Calderon*, 59 F.3d 815 (9th Cir. 1995)). "Although a defendant may have a right, even of a constitutional dimension, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose." *Id.* Nor does invocation of that right prevent law enforcement from searching an arrestee who has been brought into a correctional facility.[4] Although the choice Gneiting was confronted with was a difficult one, it was not involuntary simply because it involved a constitutional right.

For the reasons above, we conclude that the State presented substantial evidence upon which a reasonable trier of fact could find Gneiting guilty of possession of certain articles within a correctional facility under Idaho Code section 18-2510(3)(c).

---

[4] This case is distinguishable from circumstances where a defendant is coerced into providing incriminating information after having invoked his or her right against self-incrimination. *See, e.g.*, *State v. Harms*, 137 Idaho 891, 55 P.3d 884 (Ct. App. 2002) (upholding a district court decision to suppress evidence where the defendant invoked his right against self-incrimination and was subsequently coerced into signing a document indicating his ownership of firearms that were found on his property). Unlike the defendant in *Harms*, Gneiting did not invoke her right against self-incrimination. Even if she had done so, the right against self-incrimination would only have prevented further questioning. It simply would not have prevented law enforcement from searching her person during the booking process.

11

## V.    CONCLUSION

Based on the foregoing, Gneiting's judgment of conviction for possession of certain articles within a correctional facility is affirmed.

Justices BRODY, BEVAN, STEGNER, AND MOELLER **CONCUR.**