Argued and submitted February 20, Sunrise Middle School, Clackamas, reversed in part; otherwise affirmed March 27, 2002

# STATE OF OREGON,
*Respondent,*

*v.*

# FARRELL DEWAYNE TIPPETTS,
*Appellant.*

# C983619CR; A108893

43 P3d 455

Monica L. Finch, Deputy Public Defender, argued the cause for appellant. With her on the brief was David E. Groom, Public Defender.

Janet A. Metcalf, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Haselton, Presiding Judge, and Wollheim and Kistler, Judges.

KISTLER, J.

**KISTLER, J.**

Defendant appeals from a judgment of conviction for supplying contraband. He argues that the trial court should have granted his motion for a judgment of acquittal because he did not voluntarily introduce marijuana into the Washington County Jail. We agree and reverse.

In October 1998, police officers obtained a warrant to search defendant's house. The officers located the house and, after knocking on the door and announcing their presence, forced the door open. Once inside, the officers saw defendant running towards the back of the house. They followed and subdued him. They placed him in handcuffs, read him his *Miranda* rights, and searched him. The officers found no drugs or other contraband on defendant. The officers then searched defendant's home, where they found methamphetamine and a weapon.

The officers formally placed defendant under arrest and took him to the Washington County Jail, where they turned him over to Officer Morey. Before searching him, Morey asked defendant whether he had any knives, needles, or drugs on him that he was bringing into the jail. Morey then searched defendant and found a small bag of marijuana in his pants pocket. Based on the marijuana Morey found, the state charged defendant with supplying contraband. A person commits the crime of supplying contraband if "[t]he person knowingly introduces any contraband into a correctional facility, youth correction facility or state hospital[.]" ORS 162.185(1)(a).[1]

At trial, defendant moved for a judgment of acquittal on the charge of supplying contraband. Relying on ORS 161.095(1), he argued that he could be found guilty of that crime only if he voluntarily introduced the contraband into the jail. Defendant contended that no reasonable juror could find that he acted voluntarily. He argued that, once he was arrested, he could not avoid taking the marijuana with him

---

[1] The state also brought other charges against defendant. Those charges are not relevant to the issue that defendant raises on appeal.

into the jail. The trial court denied defendant's motion, reasoning that defendant could have avoided the charge by admitting to possession of the marijuana before the officer discovered it.

On appeal, defendant renews his argument that proof of a voluntary act is a necessary prerequisite to proving criminal liability and that he did not voluntarily introduce marijuana into the jail. Defendant bases his argument on ORS 161.095(1), which provides:

"The minimal requirement for criminal liability is the performance by a person of conduct which includes a voluntary act or the omission to perform an act which the person is capable of performing."

The state, for its part, does not defend the trial court's ruling on the ground that the court articulated,[2] nor does the state argue that there is evidence in this case from which a reasonable juror could find that defendant chose to take the marijuana into the jail with him.[3] Rather, the state argues that defendant reads ORS 161.095(1) too broadly. It argues initially that the term "voluntary act" is defined by statute and means only that the defendant is conscious or aware of the act. In the state's view, as long as defendant was aware that he possessed the marijuana when the officers took him into the jail, that fact alone provides a sufficient basis for saying that he voluntarily introduced the marijuana into the jail. The state argues alternatively that, even if defendant did not

[2] The state does not dispute that, without a sufficient promise of immunity, Article I, section 12, of the Oregon Constitution, and the Fifth Amendment to the United States Constitution prevent the state from forcing defendant to choose between admitting to possession of a controlled substance and being charged with introducing that substance into a correctional facility. There is no evidence in this record that defendant was promised immunity from criminal liability if he admitted to possessing controlled substances.

[3] The state does not argue that, even if defendant's interpretation of the statute were correct, we may affirm the trial court's ruling because there is circumstantial evidence that would permit a reasonable juror to infer that defendant made a conscious choice to take the contraband with him into the jail. For example, the state does not argue that there is any evidence that would permit a reasonable juror to find that defendant could have disposed of the contraband after he was arrested but chose not to do so.

voluntarily introduce the marijuana into the jail, he voluntarily possessed it before his arrest and that act is sufficient to satisfy ORS 161.095(1).

We begin with the text and context of ORS 161.095(1). *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993). ORS 161.095(1) provides that "[t]he minimal requirement for criminal liability is the performance by a person of conduct which includes a voluntary act[.]" By its terms, the statute requires (1) that the act that gives rise to criminal liability be performed or initiated by the defendant and (2) that the act be voluntary. ORS 161.085(2), in turn, defines the phrase "voluntary act." It means "a bodily movement performed consciously[.]" ORS 161.085(2).

■     The texts of ORS 161.095(1) and ORS 161.085(2) support defendant's position. Applied to the charge of supplying contraband, they require (1) that defendant either initiate the introduction of contraband into the jail or cause it to be introduced and (2) that he do so consciously. Defendant, however, did not initiate the introduction of the contraband into the jail or cause it to be introduced in the jail. Rather, the contraband was introduced into the jail only because the police took defendant (and the contraband) there against his will.

The state argues, however, that the use of the word "consciously" in the definition of the phrase "voluntary act" somehow changes that conclusion. The state reasons that the word consciously means "aware" and that an act will be voluntary as long as the defendant is aware that it is occurring. In explaining its position at oral argument, the state reasoned that, under its interpretation, if the police forcibly took a minor who was intoxicated out of his or her house and brought the minor into a public area, he or she could be convicted of public intoxication. In the state's view, the police's movement of the person into a public area would be a "voluntary act" that would satisfy ORS 161.095(1), as long as the person was aware that he or she was being moved.

The state's interpretation of ORS 161.095(1) and ORS 161.085(2) is problematic. If its interpretation were correct, the use of the word "consciously" would negate the

proposition, explicit in ORS 161.095(1) and implicit in ORS 161.085(2), that the defendant him- or herself must perform or initiate the bodily movement that gives rise to criminal liability. Contrary to the state's interpretation, it is possible to read "consciously" in a way that is consistent with the rest of those statutes. The legislature could have added the word "consciously" to make clear that a defendant will be held criminally liable only for those acts that he or she consciously performs. In other words, inclusion of the requirement that acts be performed "consciously" serves to exclude unconscious bodily movements that a defendant performs, such as reflex actions or actions that a defendant takes during a epileptic seizure. It does not suggest, as the state reasons, that a defendant who has been moved against his or her will and is conscious of that fact has acted voluntarily.[4]

The context also supports defendant's position. *See PGE*, 317 Or at 611. ORS 161.025(1) sets out the general purposes of the criminal code.[5] One of those purposes is to "define the act or omission and the accompanying mental state that constitute each offense and limit the condemnation of conduct as criminal when it is without fault." ORS 161.025(1)(d). Subsection (1)(d) reflects the legislature's intent to limit, as a general rule, the acts for which a person may be held criminally liable to those acts for which the person may be said to be at fault. Defendant argues, and we agree, that the concept of fault ordinarily implies the ability to choose and that, on these facts, he cannot be said to have chosen to introduce the marijuana into the jail. Although defendant's interpretation of ORS 161.095(1) appears more persuasive than the state's,

---

[4] In responding to the state's reading of "consciously," defendant directs us to the dictionary. *See PGE*, 317 Or at 611 (looking to the dictionary to determine what words of common usage mean). He notes that the word "conscious" can mean either "perceiving, apprehending, or noticing with a degree of controlled thought or observation" or "having rational power: capable of thought, will, design, or perception." *Webster's Third New Int'l Dictionary*, 482 (unabridged ed 1993). Defendant acknowledges that the former definition is consistent with the state's interpretation but argues that the latter definition supports his position. We note that the dictionary also defines "conscious" as "involving rational power, perception, and awareness: embodying consideration and decision ‹our ~ actions›[.]" *Id.* The latter two definitions support the notion that the legislature intended to require considered action and are consistent with the ordinary understanding of the phrase "voluntary act," which they define.

[5] ORS 161.025(2) directs us to consider those purposes in interpreting the code.

the state's interpretation is not implausible. We accordingly look to the statute's history to determine the legislature's intent. *PGE*, 317 Or at 611-12.

ORS 161.095(1) was enacted in 1971 as part of a comprehensive revision of the Oregon Criminal Code. *See* Or Laws 1971, ch 743, § 7. The commentary to the code explains that ORS 161.095(1) reflects the

> "basic principle that, no matter how an offense is defined, the minimal requirement for criminal liability is conduct which includes a 'voluntary' act or omission. This excludes all 'involuntary' acts such as reflex actions, acts committed during hypnosis, epileptic [seizure], etc."

Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report (July 1970), § 8. Other legislative history echos the commentary; committee minutes reveal that the minimum requirement for criminal culpability is that the person "must do something * * * that he is able to do." Minutes, Senate Criminal Law and Procedure Committee, SB 40, February 17, 1971, p 9. Excluded from criminal liability are involuntary acts, such as reflexive acts, acts committed under hypnosis, or acts committed during an epileptic seizure. *Id.*

The legislative history reveals the legislature's intent more clearly. Acts that occur when the actor is unconscious, while having a seizure, or that are reflexive do not result in criminal liability because the actor, on account of the seizure or the hypnosis, no longer possesses the ability to choose his or her actions; those actions are beyond the person's ability to control. Stated another way, these examples of involuntary acts make clear that a voluntary act requires something more than awareness. It requires an ability to choose which course to take—*i.e.*, an ability to choose whether to commit the act that gives rise to criminal liability. Conversely, a person may be aware that a particular act is being committed during a seizure or during a reflexive act, but that fact alone does not make the act voluntary.[6]

---

[6] The state argues that, because the New York statutes and the Model Penal Code make this point more clearly than Oregon's statute, we should conclude that the Oregon Legislature intended to require only that a defendant be aware of his acts. We question whether the premise of the state's argument is correct. But, even

■ Having considered the text, context, and legislative history of ORS 161.095(1) and ORS 161.085(2), we hold that, when the legislature defined "voluntary act" as a "bodily movement performed consciously," it intended to require more than awareness. It required some evidence that the defendant had the ability to choose to take a particular action. The state does not argue that there is any evidence from which a reasonable juror could find that defendant had such a choice, and we turn to the alternative basis that the state advances for upholding the trial court's ruling.

As noted, the state argues that, even if the introduction of the drugs into the jail was not itself a "voluntary act," ORS 161.095(1) requires only "the performance by a person of conduct which *includes* a voluntary act[.]" (Emphasis added.) The state reasons that, even if defendant did not voluntarily introduce the marijuana into the jail after the police arrested him, he voluntarily possessed it before he was arrested. The earlier voluntary act of possession, the state concludes, is sufficient to hold defendant criminally liable for the later involuntary act of introducing the marijuana into the jail. Defendant responds that ORS 162.185(1)(a) punishes the act of introducing the contraband into a correctional facility; it does not punish the act of possessing drugs. Defendant reasons that turning the voluntary act of possession into the predicate for holding him liable for involuntarily introducing marijuana into the jail stretches the word "includes" too far.

The text of ORS 161.095 does not resolve the parties' debate. The word "includes" is broad enough to permit the state's interpretation of the statute, as well as defendant's. Neither party identifies any relevant context that would resolve the textual ambiguity, and we look to the statute's history to determine the legislature's intent. *See PGE*, 317 Or at 611-12.

ORS 161.095(1) derives from the Model Penal Code. Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report (July

---

if the legislature could have been more explicit, the text, context, and legislative history of ORS 161.095(1), considered together, still provide clear direction.

1970), § 8. The commentary to the analogous section of the Model Penal Code explains:

> "It will be noted that the formulation does not state that liability must be based on the voluntary act or the omission *simpliciter*, but rather upon conduct which *includes* such action or omission. The distinction has some analytical importance. If the driver of an automobile loses consciousness with the result that he runs over a pedestrian, none of the movements or omissions that accompany or follow this loss of consciousness may in themselves give rise to liability. But a prior voluntary act, such as the act of driving, or a prior omission, such as failing to stop as he felt illness approaching, may, under given circumstances, be regarded as sufficiently negligent for liability to be imposed. In that event, however, liability is based on the entire course of conduct, including the specific conduct that resulted in the injury."

American Law Institute, Model Penal Code § 2.01, 120 (Tentative Draft No. 4 1955) (emphasis in original).[7] As Wechsler explains, "[i]f liability is imposed, it must be attributed to prior voluntary action or a prior omission included in the course of conduct culminating in the homicide, such as the act of driving or the failure to stop when the driver felt that illness was approaching." Herbert Wechsler, *Codification of Criminal Law in the United States: The Model Penal Code*, 68 Colum L Rev 1425, 1436 (1968).

■ The commentary to the Model Penal Code makes clear that the mere fact that defendant voluntarily possessed the drugs before he was arrested is insufficient to hold him criminally liable for the later act of introducing the drugs into the jail. Rather, to satisfy ORS 161.095(1), the involuntary act must, at a minimum, be a reasonably foreseeable or likely consequence of the voluntary act on which the state seeks to base criminal liability. *See* American Law Institute, Model Penal Code § 2.01, 120 (Tentative Draft No. 4 1955); *State v. Gooze*, 14 NJ Super 277, 81 A2d 811, 816 (1951) (cited in the commentary to the Model Penal Code).[8] On these facts, no

---

[7] The American Law Institute approved the proposed official draft of the Model Penal Code in 1962. *See* American Law Institute, Model Penal Code vii-viii (Proposed Official Draft 1962). That draft adopts the commentary from the fourth tentative draft to explain the basis for section 2.01 of the Model Penal Code. *Id.* at 25.

[8] In *Gooze*, the defendant chose to drive knowing that he was subject to epileptic seizures. He blacked out while driving and killed another person. Because the

reasonable juror could find that the introduction of contraband into the jail was a reasonably foreseeable consequence of possessing it. Moreover, the state does not dispute that, in this case, the police's act of arresting defendant and transporting him to the jail was an intervening cause that resulted in the marijuana's being introduced into the jail. The state's alternative argument provides no basis for upholding the trial court's ruling.

Conviction for supplying contraband reversed; otherwise affirmed.

---

homicide was a "likely" or "reasonably foreseeable" consequence of the defendant's decision to drive, his voluntary decision to drive provided a sufficient basis to hold him liable for negligent homicide. *See* 81 A2d at 814, 816.