200 P.3d 1037

**STATE of Arizona, Appellant,**

v.

**Ivan ALVARADO, Appellee.**

**No. 1 CA–CR 07–0738.**

Court of Appeals of Arizona, Division 1, Department C.

Dec. 26, 2008.

Sheila Sullivan Polk, Yavapai County Attorney By Dennis M. McGrane, Chief Deputy County Attorney, Prescott, Attorneys for Appellant.

Abigail Jensen, PC, Prescott, Attorney for Appellee.

## OPINION

HALL, Judge.

¶ 1 The offense of promoting prison contraband occurs when a person "knowingly takes contraband into a correctional facility or the grounds of such facility." Ariz.Rev. Stat. (A.R.S.) § 13–2505 (2001). The trial court granted defendant's post-verdict motion for a judgment of acquittal on the charge of promoting prison contraband, reasoning that defendant did not "voluntarily" take marijuana into the jail following his arrest because it was concealed on his person when he was arrested. The State appeals the trial court's ruling. We conclude that the evidence supports the jury's determination that defendant committed the offense of promoting prison contraband even though he did not "voluntarily" choose to enter the correctional facility. Therefore, we reverse the judgment of acquittal entered by the trial court and direct the court to reinstate the jury's guilty verdict.

¶ 2 We view the evidence at trial in the light most favorable to upholding the jury's verdict. State v. Moody, 208 Ariz. 424, 435 n. 1, 94 P.3d 1119, 1130 n. 1 (2004). The evidence showed that a police officer, responding to a call reporting a possible family fight, felt what he believed to be a pipe in defendant's coat pocket when he was patting him down for weapons. Defendant told the officer that it was his marijuana pipe and gave the officer permission to remove it from his pocket. As the officer was securing defendant in handcuffs, defendant volunteered that he had marijuana in another coat pocket. The officer retrieved a baggie of marijuana weighing 71 milligrams from the pocket defendant had indicated, and completed his pat down before placing defendant in the police car for transportation to the Yavapai County Jail.

¶ 3 Before entering the jail, the police officer asked defendant if he had any drugs or weapons on him, and warned him that he faced additional charges if he took drugs or weapons into the jail. Defendant responded, "No." The police officer repeated the question and warning before defendant entered the jail, and defendant again responded, "No." After defendant was brought into the facility to commence the booking process, a detention officer also asked defendant if he

had any weapons or drugs on him,[1] and defendant "sort of murmured no." The detention officer, however, searched defendant's person and removed a container from one of defendant's pockets, which, when opened, held 790 milligrams of marijuana.[2] Defendant volunteered, "Oh, man, I worked hard for that chronic," a slang term for marijuana.

¶ 4 The judge denied defendant's request for a preliminary instruction that the crime of promoting prison contraband requires proof that "the defendant knowingly and voluntarily took contraband into a correctional facility," but agreed to add a definition of "voluntary act" to the preliminary instructions. At the close of the State's case, defendant moved for judgment of acquittal on the charge on the ground that the State had not met its burden "to prove [he] voluntarily brought contraband into the jail." The judge denied the motion, finding the evidence sufficient to go to the jury "based on the evidence that it was on his person at the time he was booked into jail." The judge allowed defendant to argue to the jury that no evidence was offered to show defendant engaged in a voluntary act, and instructed the jury that the State must prove that defendant had committed a voluntary act, again defining the term as "a bodily movement performed consciously and as a result of effort and determination." The jury convicted defendant of promoting prison contraband, possession of marijuana, and possession of drug paraphernalia.

¶ 5 Defendant renewed his motion for judgment of acquittal after trial, relying in his reply on *State v. Tippetts*, 180 Or.App. 350, 43 P.3d 455, 459–60 (2002), in which the Oregon appellate court reversed a conviction for smuggling contraband into the jail on the ground that the evidence failed to show that the defendant committed the voluntary act necessary for culpability. The judge granted defendant's renewed motion for judgment of acquittal, reasoning that "the facts and the

law recited and relied upon in *Tippetts* are virtually identical to the facts and law in this case. The rationale and holding clearly and articulately stated in *Tippetts* are determinative of this case."

¶ 6 The State timely appealed. We have jurisdiction pursuant to A.R.S. § 13–4032(7) (Supp.2008).

## DISCUSSION

¶ 7 The State argues that the judge erred in granting the renewed motion for judgment of acquittal because she "misconstrued the definition of a 'voluntary' act as it relates to criminal liability in Arizona." We review a trial court's grant of a post-conviction judgment of acquittal for an abuse of discretion. *See State ex rel. Hyder v. Superior Court*, 128 Ariz. 216, 224, 624 P.2d 1264, 1273 (1981). "To find that the evidence was sufficient before the jury got the case, but not after, can be justified only on the basis of a mistake of law on the part of the court and not fact on the part of the jury." *Id.* at 224, 624 P.2d at 1272. In conducting our review, we view the facts in the light most favorable to upholding the jury's verdict. *State v. Carrasco*, 201 Ariz. 220, 221, ¶ 1, 33 P.3d 791, 792 (App.2001). "Reversible error based on insufficiency of the evidence occurs only where there is a complete absence of probative facts to support the conviction." *State v. Soto–Fong*, 187 Ariz. 186, 200, 928 P.2d 610, 624 (1996). We review purely legal issues de novo. *Mejak v. Granville*, 212 Ariz. 555, 556, ¶ 7, 136 P.3d 874, 875 (2006).

¶ 8 The State charged defendant, pursuant to A.R.S. § 13–2505(A)(1), with promoting prison contraband by knowingly taking marijuana into the Yavapai County Jail. At issue in this appeal is A.R.S. § 13–201 (2001), which provides that "[t]he minimum requirement for criminal liability is the performance by a person of conduct which includes a voluntary act or the omission to perform a

---

1. According to the detention officer, the precise question he asked defendant is one he usually asks: "Do you have any hand grenades, rocket launchers, missiles, drugs, guns, knives, or anything else I need to know about?"

2. The officer described the container as a "Carmex container-a small white, round container." Carmex is a lip balm that is commonly sold in white opaque jars with a screw-on lid. *See* http://www.mycarmex.com/our-products/default.aspx (last visited December 19, 2008).

duty imposed by law which the person is physically capable of performing." The legislature has defined "voluntary act" as "a bodily movement performed consciously and as a result of effort and determination." A.R.S. § 13–105(37) (2001).[3]

¶ 9 In *Tippetts,* the Oregon appellate court considered the appeal of a defendant who was convicted of introducing marijuana into the jail under similar circumstances. *Id.* at 456. The marijuana was in defendant's pants pocket when he was arrested. *Id.* A jail officer asked the defendant if he had drugs or weapons on him before searching him and discovering the marijuana, to which the defendant apparently made no response. *Id.* On appeal, the defendant argued that proof of a voluntary act was a necessary prerequisite to his conviction, and that such evidence was missing because "once he was arrested, he could not avoid taking the marijuana with him into the jail." *Id.*

¶ 10 The *Tippetts* court agreed with the defendant that, under the circumstances, he did not "initiate the introduction of the contraband into the jail or cause it to be introduced into the jail," as necessary under its interpretation of the requirement of a "voluntary act." 43 P.3d at 457. "Rather, the contraband was introduced into the jail only because the police took defendant (and the contraband) there against his will." *Id.* This is so, the court explained, because the concept of fault implies the ability to choose, and, on these facts, "he cannot be said to have chosen to introduce the marijuana into the jail." *Id.* at 458. The court further explained that the requirement of a voluntary act dictated "that the mere fact that defendant voluntarily possessed the drugs before he was arrested is insufficient to hold him criminally liable for the later act of introducing the drugs into the jail." *Id.* at 459. The court also reasoned that the constitutional privilege against self-incrimination prevented "the state from forcing defendant to choose between admitting to possession of a controlled substance and being charged

with introducing that substance into a correctional facility." *Id.* at 457 n. 2.

¶ 11 In order for the "involuntary act" of entering the jail with drugs to supply the basis for a conviction of conveying drugs into the jail, the court held, "the involuntary act must, at a minimum, be a reasonably foreseeable or likely consequence of the voluntary act on which the state seeks to base criminal liability." *Id.* at 459–60. On the facts before it, the court held, "no reasonable juror could have found that the introduction of contraband into the jail was a reasonably foreseeable consequence of possessing it." *Id.* at 460. Rather, the court reasoned, under those facts, the police officer's "act of arresting defendant and transporting him to the jail was an intervening cause that resulted in the marijuana's being introduced into the jail." *Id.* Accordingly, the *Tippetts* court reversed the defendant's conviction for introducing contraband into the jail. *Id.*

¶ 12 Courts outside this jurisdiction have split on whether entering a jail involuntarily with drugs in one's possession can form the basis of a conviction for introducing contraband into the jail. Three jurisdictions have followed the reasoning outlined in *Tippetts* to preclude a defendant from being convicted of smuggling drugs into prison if the drugs were simply on his person when he was arrested. *See State v. Cole,* 142 N.M. 325, 164 P.3d 1024, 1026–27 (App.2007) (agreeing with the reasoning of *Tippetts,* holding that, "to be found guilty of bringing contraband into a jail ... a person must enter the jail voluntarily"); *State v. Sowry,* 155 Ohio App.3d 742, 803 N.E.2d 867, 870, ¶¶ 18–19 (2004) (holding that the defendant could not be held liable for conveying drugs into the detention facility because he had no control over his person once he was arrested); *State v. Eaton,* 143 Wash.App. 155, 177 P.3d 157, 160–65 (2008) (agreeing with *Tippetts,* reasoning that the legislature "did not intend the unlikely, absurd, or strained consequence of punishing a defendant for his *involuntary* act"), *review granted by Eaton,* 164 Wash.2d 1013, 195 P.3d 88 (2008).

---

**3.** The definitions have since been renumbered, but have not changed in substance. *See* A.R.S. § 13–105(41) (Supp.2008).

¶ 13 Courts in five jurisdictions, however, have diverged from or rejected the analysis of *Tippetts,* holding that no more than entry into jail knowing that one is carrying contraband is required by the plain terms of the governing statutes. *See People v. Ross,* 162 Cal.App.4th 1184, 76 Cal.Rptr.3d 477, 479–82 (2008) (rejecting *Tippetts* on policy grounds in interpreting statute prohibiting bringing weapons into jail, and holding that Fifth Amendment did not protect defendant from the consequences of her lie to the booking officer that she had no weapons on her);[4] *State v. Carr,* 2008 WL 4368240 at 5 (Tenn. Crim.App.2008) (rejecting the reasoning of *Tippetts* as contrary to "sound policy" and the intent of the legislature "in its enactment of this offense"); *State v. Winsor,* 110 S.W.3d 882, 886–88 (Mo.App.2003) (affirming defendant's conviction for possessing a controlled substance in jail in face of his argument that he was in jail involuntarily, reasoning that voluntary presence in jail was not an element of the offense, and to hold otherwise would lead to absurd result); *Brown v. State,* 89 S.W.3d 630, 633 (Tex.Crim.App.2002) (rejecting defendant's claim that he did not voluntarily bring marijuana into the jail, reasoning that under Texas law, the term "voluntarily" means simply the "absence of an accidental act, omission or possession"); *State v. Canas,* 597 N.W.2d 488, 496–97 (Iowa 1999) (rejecting defendant's claim that he did not voluntarily bring marijuana into the jail, reasoning that defendant had the option of disclosing the drugs before he entered the jail, and this choice did not impermissibly burden his Fifth Amendment right to remain silent), *abrogated in part on other grounds by State v. Turner,* 630 N.W.2d 601, 606 n. 2 (Iowa 2001).

¶ 14 We decline to follow *Tippetts* and its progeny because our supreme court's inter-pretation of the requirement of a "voluntary act" and the plain terms and purpose of the statute prohibiting the promotion of contraband dictate a different analysis and conclusion. When construing statutes, we make every effort to give effect to the intent of the legislature. *Mejak,* 212 Ariz. at 557, ¶ 8, 136 P.3d at 876. We consider the statutory language the best indicator of that intent, and we go no further to ascertain the intent if the language of the statute is clear and unambiguous. *Id.* We employ a common sense approach, reading the statute in terms of its stated purpose and the system of related statutes of which it forms a part, taking care, however, to avoid absurd results. *See State v. Rodriguez,* 205 Ariz. 392, 396, ¶ 11, 71 P.3d 919, 923 (App.2003); *State v. Affordable Bail Bonds,* 198 Ariz. 34, 37, ¶ 13, 6 P.3d 339, 342 (App.2000).

¶ 15 In *State v. Lara,* 183 Ariz. 233, 234–35, 902 P.2d 1337, 1338–39 (1995), our supreme court explained that the requirement that an act be "voluntary" is simply a codification of the common law requirement of *actus reus,* a requirement grounded in the principle that a person cannot be prosecuted for his thoughts alone, and that the voluntary act requirement does not modify the *mens rea* required for the offense. The court therefore concluded that expert testimony that the defendant suffered from a brain disorder that caused him to fly into a rage "as if by reflex" was insufficient to support a voluntary act instruction. *Id.* The court stated that the statutory requirement that the conduct include "a bodily movement performed consciously and as a result of effort and determination" simply means that the defendant engage in "a determined conscious bodily movement, in contrast to a knee-jerk reflex driven by the autonomic nervous system." *See id.*[5]

---

4. The California Supreme Court has granted review of two cases in which California's intermediate appellate court has issued inconsistent rulings regarding a related statute criminalizing the act of bringing drugs into jail. In *People v. Gastello,* 57 Cal.Rptr.3d 293, 294 (App.2007), *review granted* June 13, 2007, the court held that the evidence failed to support a conviction because the defendant "entered the jail only due to being arrested and brought there in custody" and therefore he did not engage in the necessary voluntary act. In *People v. Low,* 2007 WL 756952 at 2 (Cal.App.2007) (unpublished disposition), *review granted* June 13, 2007, however, the court upheld the defendant's conviction, explaining the statute did not require that the defendant " 'voluntarily' enter a detention facility carrying illegal drugs."

5. Defendant's argument that the *Lara* court did not address the requirement that the act be the "result of effort and determination" is incorrect. In interpreting the "voluntary act" requirement, the court characterized the evidence as showing

¶ 16 Defendant, however, would have us interpret the governing statutes to require that the State not only prove that defendant knew that he was taking marijuana into the jail but that he was entering the jail "voluntarily." In making this request, defendant confuses the concept of a "voluntary act" with the requisite culpable mental state for the offense. Again, as explained in *Lara*, 183 Ariz. at 235, 902 P.2d at 1339: " '[V]oluntary act' means *actus reus*. On the other hand, 'voluntary' has also been used to describe behavior that might justify inferring a particular culpable mental state." *Id.* at 235, 902 P.2d at 1339. The evidence in this case is more than sufficient to demonstrate that defendant had the necessary *mens rea* of "knowingly" taking the marijuana into the jail, as evidenced by his statement, "Oh man, I worked hard for that chronic." If we were to adopt defendant's interpretation, the statute would only apply to non-inmates, such as employees or visitors, who "voluntarily" enter the jail while carrying drugs. The statute is not so limited and we decline, under the guise of interpretation, to modify the statute in a manner contrary to its plain wording. *See Winsor*, 110 S.W.3d at 887 ("Whether Appellant's presence on the county jail's premises was voluntary or against his will is irrelevant for purposes of determining whether he committed the offense.").[6]

¶ 17 We also find inapposite cases from other jurisdictions that have held that a defendant did not commit the requisite voluntary act under circumstances in which another actor actually controlled defendant's actions that comprised the prohibited *actus reus*. For example, in *Martin v. State*, 31 Ala.App. 334, 17 So.2d 427 (1944), the defendant was drinking in his home when police officers arrested him and took him onto the highway, where he became loud and profane.

The court reversed his conviction for public drunkenness because the plain terms of the statute, which prohibited a person from appearing in a public place and "manifest[ing] a drunken condition by boisterous or indecent conduct, or loud and profane discourse," presuppose a voluntary appearance in a public place. *Id.* In Arizona, however, as we have explained, the offense of promoting prison contraband pursuant to § 13–2505(A)(1) does not require that a person voluntarily enter the jail before he may be charged with violating the statute.

¶ 18 Finally, the circumstance here that both the arresting officer and the detention officer informed defendant of the consequences of bringing contraband into the jail and gave him an opportunity to surrender any contraband beforehand highlight that defendant was performing a bodily movement "consciously and as a result of effort and determination" when he carried the contraband into the jail. That defendant chose not to disclose that he possessed an additional amount of marijuana on his person does not somehow absolve him of responsibility for his actions on the theory that providing him an opportunity to choose between admitting to possession of the marijuana and being charged with introducing that substance into the jail violates the self-incrimination clause of the Fifth Amendment. *See Canas*, 597 N.W.2d at 496 ("Sometimes the choices faced by a defendant may have the effect of discouraging the exercise of constitutional rights but that does not mean such choices are prohibited."). In this regard, we agree with the Court of Criminal Appeals of Tennessee:

Appellant's possession of a controlled substance was voluntary in that, after being advised of the consequences of bringing

---

that Lara was both conscious and "relentless in his effort and determination." 183 Ariz. at 234, 902 P.2d at 1338 (offering examples of involuntary bodily movements that would not be "performed consciously and as a result of effort and determination"). *See* Model Penal Code § 2.01(2) (1985) (explaining reflexes, convulsions, movements during unconsciousness or sleep, conduct during hypnosis, and other bodily movements that otherwise are not the result of the effort or determination of the actor, are not "voluntary acts").

**6.** We note that *Tippetts* has been extended to inmates who are charged with possessing contraband while in a correctional facility. *See State v. Gotchall*, 180 Or.App. 458, 43 P.3d 1121, 1121 (2002) (per curiam) ("If defendant did not voluntarily introduce contraband into the correctional facility, we do not see how ... she could voluntarily possess that contraband once she was confined in the facility.").

drugs into the jail, the Appellant consciously chose to ignore the officers' warnings, choosing instead to enter the jail in possession of cocaine. Under these circumstances, the Appellant was the author of his own fate.

*Carr,* 2008 WL 4368240 at 5.

### CONCLUSION

¶ 19 Because the evidence in this case sufficiently demonstrated that defendant consciously, with effort and determination, engaged in the prohibited conduct of carrying marijuana into the Yavapai County Jail, the trial court erred in entering a judgment of acquittal. We therefore reverse the judgment of acquittal, direct the court to reinstate the jury's verdict, and remand for further proceedings consistent with this Opinion.

CONCURRING: LAWRENCE F. WINTHROP, Presiding Judge and PATRICK IRVINE, Judge.