IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 124,469

STATE OF KANSAS,
*Appellee*,

v.

CRISTA G. HINOSTROZA,
*Appellant*.

SYLLABUS BY THE COURT

1.

An arrestee who consciously acts to conceal and carry contraband into a correctional facility acts voluntarily.

2.

Constitutional issues generally cannot be raised for the first time on appeal. Under Kansas Supreme Court Rule 6.02(a)(5) (2024 Kan. S. Ct. R. at 36), a party must provide "a pinpoint reference to the location in the record on appeal where the issue was raised and ruled on. If the issue was not raised below, there must be an explanation why the issue is properly before the court."

3.

When viewed in a light most favorable to the State, an arrestee's admissions to being asked on arrest about possession of a weapon, to intentionally not disclosing possession of a weapon, and to knowing that weapons were not allowed in a jail facility, are sufficient to allow a rational fact-finder to conclude the arrestee intended to introduce contraband into a correctional facility.

4.

An arrestee's admission to knowing that a correctional facility did not permit guns on its premises, when viewed in the light most favorable to the State, is sufficient to allow a rational fact-finder to conclude the arrestee had notice that a gun was considered contraband by the administration of the correctional facility.

5.

Administrators of correctional facilities must provide fair notice about what constitutes contraband in their facility under K.S.A. 21-5914. That warning need not be individualized.

Review of the judgment of the Court of Appeals in an unpublished opinion filed November 23, 2022. Appeal from Lyon District Court; W. LEE FOWLER, judge. Oral argument held September 12, 2023. Opinion filed August 2, 2024. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Randall L. Hodgkinson,* of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Brian Henderson*, assistant county attorney, argued the cause, and *Laura L. Miser*, assistant county attorney, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, C.J.:  Crista Hinostroza requests review of the Court of Appeals decision affirming her conviction for trafficking contraband into a correctional facility. Law enforcement officers arrested Hinostroza and took her to jail where the contraband was discovered. She argues that she cannot be criminally liable because she did not commit a voluntary act, nor did she have the requisite culpable mental state to be guilty of trafficking contraband. She also contends she did not receive notice of what items

2

were prohibited in the jail on the day of her arrest. Finally, Hinostroza challenges the jury instruction about trafficking contraband because the jury was not instructed that she must receive individualized notice of what items were prohibited in the jail.

We reject her arguments and affirm her conviction.

FACTUAL AND PROCEDURAL BACKGROUND

Officers from the Lyon County Sheriff's department and the Emporia Police Department responded to a call about a person who refused to leave a property. The officers encountered Hinostroza, and discovered she had municipal warrants for her arrest. As an officer attempted to arrest Hinostroza, a brief struggle ensued during which the officer took Hinostroza to the ground. A deputy arrived and transported Hinostroza to the Lyon County jail in his patrol vehicle.

While putting Hinostroza in the car, the deputy asked Hinostroza whether she had any drugs or weapons. Hinostroza said she had a syringe but said nothing about a gun. The deputy did not perform a pat down search because he did not want to get poked by an uncapped needle. At the jail, the deputy drove his vehicle into the area where inmates are unloaded. Female officers met the patrol car and learned Hinostroza had reported a syringe in her bra. Female officers escorted Hinostroza, who was handcuffed, to a holding cell to conduct a search. The searching officer explained that Hinostroza "kind of hid herself in the corner and she said, 'I will get it.'" The officers would not allow Hinostroza to reach for any hidden item, and one of them "kind of got over in the corner and got her out." The officer felt the syringe along the side of Hinostroza's bra line and lifted the bra. The syringe and needle fell out and the officer discovered a small handgun tucked in the center of Hinostroza's bra.

3

The State charged Hinostroza with trafficking contraband (a weapon) into a correctional facility, possession of a weapon by a felon, interference with a law enforcement officer, and battery on a law enforcement officer. At trial, the State introduced into evidence several photographs of the jail and bodycam videos of the officers who responded to the scene, transported Hinostroza to jail, and searched her at the jail. In addition, those officers and the captain who oversees the jail testified. The captain explained the jail's contraband policy and testified it prohibited bringing a gun into the holding cell where it was found in Hinostroza's possession.

The State admitted photographs of signs at the jail warning against contraband. An officer testified that identical signs are posted on every entrance into the jail, in the intake area, and near the holding area where Hinostroza was taken upon her arrival at the jail. The officer explained that the sign near the holding area might have been blocked by the door when Hinostroza was brought in because officers came out the door to bring her directly from the patrol car to a holding cell. But the officer added that Hinostroza would have been brought in and out of the door shown in one of the photographs many times when she participated in a work release program during a previous incarceration four years earlier. Another photograph showed the identical sign in a room where work release inmates were brought on their return to the jail after they returned from their work assignment. The sign was located on a wall opposite a bench the inmates sat on while waiting to be searched upon their return. The officer explained that these signs had not changed during the time between when Hinostroza was a work release inmate and when she was arrested with the gun.

The signs had a large red stop sign at the top. Below the stop sign, it warned in large letters:  "NO CONTRABAND PAST THIS POINT." Below that in smaller but still-large letters was a bullet-point list defining contraband as weapons, tobacco, illegal drugs, anything altered from original form, and any item that does not have prior approval of facility administration. At the bottom, again in larger letters, the sign warned:

4

"ANY PERSON BRINGING CONTRABAND PAST THIS POINT/ May be charged with K.S.A. 21-3826." K.S.A. 21-3826 was the trafficking contraband statute before a recodification caused the statute to be moved to its current location, K.S.A. 21-5914.

The officer also explained that Hinostroza signed a work release contract during her earlier incarceration that explained the contraband rules. The contract allowed Hinostroza to bring a wallet, keys, and work clothes back into the jail but nothing else. She would have been admonished not to have a weapon.

No evidence was admitted establishing that anyone orally advised Hinostroza on the day of her arrest that she could be charged with a crime for bringing a weapon into the jail.

After the State rested its case, Hinostroza testified. In response to her attorney's questions, she confirmed that she told the transporting officer she did not have a weapon on her. She explained that she was not comfortable with male officers touching her and if she told him she had a gun he probably would have grabbed it. But she thought he would not search her if he knew she had a concealed needle. She said she knew she would be safe with the jail's female staff who would search her when she got to the jail. Hinostroza testified that, once under arrest, she knew the jailers would find the gun. On cross-examination by the State, Hinostroza admitted she did not tell the female officer who searched her about the gun. Hinostroza also admitted that on the day of her arrest she knew she could not take a gun into the Lyon County jail.

A jury convicted Hinostroza of criminal possession of a firearm, trafficking contraband in a correctional facility, and interference with a law enforcement officer. The jury found Hinostroza not guilty of battery on a law enforcement officer.

5

Hinostroza appealed the conviction for trafficking contraband into a correctional facility, arguing the State failed to meet its burden to prove she intended to bring the firearm into the jail. She also argued the jury instruction on trafficking was incorrect because it did not require the jury to find Hinostroza received individualized notice that it was a crime to bring a firearm into the jail.

The Court of Appeals affirmed her convictions. *State v. Hinostroza*, No. 124,469, 2022 WL 17174546 (Kan. App. 2022) (unpublished opinion).

Hinostroza timely petitioned this court for review of the Court of Appeals' opinion affirming her convictions. We granted review and have jurisdiction under K.S.A. 20-3018(b) (allowing jurisdiction over petitions for review of Court of Appeals decisions); K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions on petition for review).

ANALYSIS

In Hinostroza's petition for review, she argues the Court of Appeals panel erred in four ways. In the first three, she attacks the sufficiency of the evidence supporting her conviction for trafficking contraband, contending the State failed to prove: (1) she acted voluntarily because she was arrested and had no choice but to go to jail, (2) she possessed the requisite mental state because she did not intend to introduce contraband into the jail, and (3) that she had individualized notice of what constituted contraband. In her fourth issue she raises a jury instruction issue, contending the jury should have been instructed on the requirement of individualized notice.

6

ISSUE 1: SUFFICIENT EVIDENCE OF A VOLUNTARY ACT

The State charged Hinostroza under K.S.A. 21-5914(a)(1) with trafficking contraband—specifically, a weapon—into the Lyon County jail. K.S.A. 21-5914(a) defines the crime of trafficking contraband in a correctional institution as, "without the consent of the administrator of the correctional institution[,] . . . : (1) Introducing or attempting to introduce any item into or upon the grounds of any correctional institution."

She does not deny she had a gun in her bra when she was taken into the holding cell of the jail, but she contends the State failed to prove she committed a voluntary act.

*Standard of Review*

We review the first three issues under a well-established standard of review that directs us to examine "the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt." *State v. Buchanan*, 317 Kan. 443, 454, 531 P.3d 1198 (2023). In that review, we do not reweigh evidence, resolve evidentiary conflicts, or weigh witness credibility. 317 Kan. at 454. The review includes direct and circumstantial evidence if the circumstantial evidence provides a basis for a reasonable inference by the fact-finder regarding the fact in issue. *State v. Colson*, 312 Kan. 739, 750, 480 P.3d 167 (2021).

Hinostroza's arguments also require us to consider legal aspects of both the trafficking contraband statute and statutes that generally cover aspects of criminal liability. We exercise de novo review when interpreting statutes and considering questions of law. *State v. Edwards*, 318 Kan. 567, 570, 544 P.3d 815 (2024).

Applying those standards, we reject Hinostroza's arguments that the evidence was insufficient to support her conviction.

*Discussion*

Hinostroza's first argument is straightforward. She contends she did not voluntarily go to jail, and thus the State failed to prove she committed the voluntary act of introducing contraband into the jail.

The requirement that Hinostroza must have voluntarily acted when she brought contraband into the jail arises from a general principle of criminal liability codified at K.S.A. 21-5201(a), which explains that "[a] person commits a crime only if such person voluntarily engages in conduct, including an act, an omission or possession." No Kansas statute defines "voluntary act." But in *State v. Dinkel*, 311 Kan. 553, 465 P.3d 166 (2020) (*Dinkel I*), we explained that "voluntary conduct or a voluntary act is 'personal behavior' 'done by design or intention' or '[a] willed bodily movement.'" 311 Kan. at 559-60 (quoting Black's Law Dictionary 1886 [11th ed. 2019], defining "voluntary," and Black's Law Dictionary 369, defining "conduct"); see *State v. Dinkel*, 314 Kan. 146, 155, 495 P.3d 402 (2021) *(Dinkel II)* (discussing the definition).

Hinostroza cites *Dinkel I* to support her argument. There, a woman was charged with raping an underaged male victim. But the woman countered that the alleged victim had forcibly raped her. She contended that even though rape of a child is a strict liability crime she could not be liable because she committed a forced, not a voluntary, act. This court agreed the woman's theory should have been put before a jury because "evidence [the alleged victim] physically forced the sexual intercourse and [the woman] did not intend any of the bodily movements that resulted in the sexual intercourse . . . is legally relevant to the voluntary act requirement." *Dinkel I*, 311 Kan. at 560.

Likewise, Hinostroza argues she was, in effect, physically forced to enter the jail because she was under arrest and in the control of officers. Thus, even though she

8

brought a gun into the jail, it was not her voluntary act. In contrast, the State identifies the voluntary act in Hinostroza's case as "the decision to continue on into the jail with [a] weapon on her person." The Court of Appeals panel accepted the State's argument and explained: "While she probably did not hide the handgun intending to sneak it into jail, she did nothing to stop or prevent the introduction of the handgun into the jail when asked if she had any weapons, unlike admitting she had a syringe." *Hinostroza*, 2022 WL 17174546, at *3.

Hinostroza challenges this language and the panel's holding for two reasons. She contends it rests on an omission, not a voluntary act, and it requires her to incriminate herself in violation of the Fifth Amendment to the United States Constitution.

*Voluntary Act*

Discussing the first point, Hinostroza points out that criminal liability cannot usually rest on an omission. Indeed, K.S.A. 21-5201, after explaining that voluntary conduct is essential to criminality, states that "[a] person who omits to perform an act does not commit a crime unless a law provides that the omission is an offense or otherwise provides that such person has a duty to perform the act." K.S.A. 21-5201(b).

The act at issue is defined in the elements of the trafficking contraband statute, K.S.A. 21-5914(a)(1) as (1) introducing or attempting to introduce (2) any item (3) into a correctional facility (4) without the consent of the administrator. It thus requires commission, not omission. Here, the evidence considered in the light most favorable to the State, supported a conclusion that Hinostroza committed the act of trafficking by intentionally concealing a gun and bringing it into the facility. Under the Court of Appeals holding, her concealment occurred through nondisclosure. Even so, she is being penalized for committing a voluntary act of trafficking contraband by concealing the gun. While the panel's discussion did not refer to K.S.A. 21-5201(b), it did illustrate how

9

disclosure can avoid commission of the crime by contrasting the facts underlying two decisions of other panels, both of which briefly discuss voluntariness while focusing on whether the State met its burden to show the defendant intended to traffic the contraband.

In *State v. Conger*, No. 92,381, 2005 WL 1561369 (Kan. App. 2005) (unpublished opinion), the panel affirmed a trial court's dismissal of trafficking contraband charges where the defendant voluntarily took a legally prescribed pill from her shoe and handed it to the booking officer before being asked if she had contraband. The panel analyzed whether the State presented sufficient evidence of intent. It concluded that by handing over the contraband the defendant "did not show any criminal intent to introduce contraband into the correctional institution" and the State had not established probable cause at the preliminary hearing. 2015 WL 1561369, at *4. After discussing *Conger*, the *Hinostroza* panel discussed how those facts related to a voluntary act, noting that while the *Conger* defendant, like Hinostroza, entered the jail involuntarily, the *Conger* defendant, unlike Hinostroza, voluntarily handed over the contraband and did not attempt to hide the contraband past the book-in point. 2022 WL 17174546, at *3.

The panel then discussed *State v. Thompson*, No. 111,932, 2015 WL 9286794 (Kan. App. 2015) (unpublished opinion), which the panel concluded was more like Hinostroza's case. There, the defendant was arrested after a car stop that resulted in police finding marijuana in her car. Before the officers transported the defendant to jail, one of them advised her of the consequences of bringing illegal contraband into jail and asked her whether she had anything illegal on her person. She denied having anything, but police found marijuana when they searched her at the jail. After a preliminary hearing, the trial court dismissed the trafficking charges.

The State appealed, and the defendant relied on *Conger*. The Court of Appeals panel noted that the only similarity between the circumstances of *Thompson* and *Conger* was that "both defendants were arrested and taken to jail involuntarily." 2015 WL

10

9286794, at *3. Otherwise, the facts differed because the *Conger* arrestee disclosed the contraband once at the jail while the *Thompson* arrestee did not. The panel found this significant and determinative. Using the words the *Hinostroza* panel would echo, the panel concluded that, while the defendant likely did not hide the marijuana on her person with the thought she might later be going to jail, "she did nothing to stop or prevent the introduction of the marijuana into the correctional institution." 2015 WL 9286794, at *3. The *Thompson* panel then approvingly quoted from the dissenting opinion in *State v. Lowe*, No. 110,103, 2015 WL 423664, *5 (Kan. App. 2015) (unpublished opinion) (Atcheson, J., dissenting), in which the judge said K.S.A. 21-5914(a)(1) "'would apply to the person who bakes a hacksaw blade in a cake and mails it to a relative in jail. *It also criminalizes the efforts of a person being booked into jail who attempts to secrete and bring in contraband.*'" *Thompson*, 2015 WL 9286794, at *3. Because the defendant in *Thompson* also attempted to bring contraband into the jail, the panel concluded the State had established probable cause she had the necessary intent to traffic contraband. 2015 WL 9286794, at *3.

Neither the *Conger* nor the *Thompson* panels considered voluntariness separate from intent, and this court has not previously considered the issue. Noting this, Hinostroza contends the panel in her case cited no legal authority that directly discussed the issue she raises. Even if Kansas courts have not directly addressed the voluntary act question, courts in our sister states have and a majority hold that arrestees commit a voluntary act of trafficking contraband in a jail facility when they continue to conceal contraband after an arrest. See *Beltz v. State*, No. A-13742, 2024 WL 2873188, at *4 n.33, ___ P.3d ___ (Alaska Ct. App. 2024) (collecting and discussing cases).

The majority view is that "an arrestee . . . makes a voluntary choice to possess the contraband within the correctional facility when she continues to conceal, fails to disclose, the contraband on her person." *State v. Gneiting*, 167 Idaho 133, 137, 468 P.3d 263 (2020). *Gneiting*, in stating the majority view, required that the arrestee have notice

11

that bringing an illegal substance into a correctional facility will constitute a separate offense. 167 Idaho at 137. For support it cited *Barrera v. State*, 403 P.3d 1025, 1028-29 (Wyo. 2017). More recently, the Wyoming Supreme Court clarified that *Barrera* did not "hold that a specific advisement was required before a finding of voluntariness could be made." *Borja v. State*, 523 P.3d 1212, 1216 (Wyo. 2023). Instead, in *Borja*, the court looked at other evidence, including the defendant's own testimony, to conclude there was evidence he voluntarily took methamphetamine into a jail. 523 P.3d at 1216-17.

Courts adopting the majority view that an arrestee can act voluntarily by concealing contraband through nondisclosure include ones applying definitions of "voluntary act" like the one we adopted in *Dinkel I*, 311 Kan. at 559-60—that is, "voluntary conduct or a voluntary act is 'personal behavior' 'done by design or intention' or '[a] willed bodily movement.'" For example, in Arizona, a voluntary act is one where the "defendant was performing a bodily movement 'consciously and as a result of effort and determination' when he carried the contraband into the jail." *State v. Alvarado*, 219 Ariz. 540, 545, 200 P.3d 1037 (Ct. App. 2008). And Alaska defines "voluntary act" "as 'a bodily movement performed consciously as a result of effort and determination.'" *Beltz* 2024 WL 2873188, at *2. Several other courts besides *Gneiting* have reached similar conclusions and, in doing so, have emphasized that an arrestee has a choice. For example, the Ohio Supreme Court explained, "[T]the fact that [the defendant's] entry into the jail was not of his volition does not make his conveyance of drugs into the detention facility an involuntary act. He was made to go into the detention facility, but he did not have to take the drugs with him." *State v. Cargile*, 123 Ohio St. 3d 343, 345, 916 N.E.2d 775 (2009). And the Wyoming Supreme Court explained arrestees have a choice about whether they will introduce contraband and that choice "exists wholly independent of whether one chooses to be in a jail." *Barrera,* 403 P.3d at 1029.

Like Hinostroza, many defendants in majority states have argued for the minority view, which holds that arrestees who have contraband in their possession when brought

into jail have involuntarily introduced the contraband. Hinostroza refers us to the courts in the minority. She discusses *State v. Tippetts*, 180 Or. App. 350, 43 P.3d 455 (2002), and cites but does not discuss *State v. Cole,* 142 N.M. 325, 327-28, 164 P.3d 1024 (Ct. App. 2007); *State v. Sowry,* 155 Ohio App. 3d 742, 745-46, 803 N.E.2d 867 (2004); and *State v. Eaton,* 168 Wash. 2d 476, 487-88, 229 P.3d 704 (2010).

Five years after the Ohio Court of Appeals decided *Sowry*, the Ohio Supreme Court adopted the majority view by holding that a person who is taken to a detention facility after arrest and who at the time of entering the facility possesses contraband has voluntarily conveyed the contraband onto the grounds of a detention facility. *Cargile*, 123 Ohio St. 3d 343. While *Cargile* did not explicitly overrule *Sowry*, it did so implicitly. As for the other three cases, courts adopting the majority view have persuasively explained the reasons they reject a rule that being under arrest means the act of taking contraband into the jail is involuntary. They cite several reasons.

For starters, *Tippetts*, which is often cited as the leading case representing the minority view, analyzes a different theory of voluntariness than typically argued by prosecutors, including those who prosecuted Hinostroza. As the *Tippetts* court explained, "[i]n the state's view, as long as defendant was aware that he possessed the marijuana when the officers took him into the jail, that fact alone provides a sufficient basis for saying that he voluntarily introduced the marijuana into the jail." 180 Or. App. at 353. The *Tippetts* court distinguished this from the argument the prosecution often makes, and the State makes here—that the voluntary act was the decision, after arrest, to conceal the contraband and bring it into a jail. 180 Or. App. at 353 n.3. Given the difference in the arguments and the fact that the *Tippetts* court did not address the issue posed in cases before them, courts adopting the majority view have often distinguished *Tippetts* and rejected its application. See, e.g., *Gneiting*, 167 Idaho at 139-40. Likewise, courts adopting the majority view have distinguished *Eaton* because there was no evidence the

13

defendant made a conscious choice to bring the contraband into the facility. See, e.g., *Gneiting*, 167 Idaho at 139-40.

This leaves only the decision by the New Mexico Court of Appeals in *Cole*, which reached its decision after citing to *Tippetts* and *Sowry*. It concluded that "[i]t is of no moment, as the State argues, that Defendant could have avoided the charge of bringing contraband into a jail by admitting to the booking officer that he possessed marijuana. The dispositive issue is that Defendant cannot be held liable for bringing contraband into a jail when he did not do so voluntarily." *Cole*, 142 N.M. at 328.

Courts have rejected *Cole*'s holding after determining it conflicts with legislative intent expressed by the plain language of their state's statutes. These courts have distinguished *Tippetts* and *Eaton* for the same reason. For example, the Arizona Court of Appeals in *Alvarado,* 219 Ariz. at 545, observed that if it adopted the "defendant's interpretation, the statute would only apply to non-inmates, such as employees or visitors, who 'voluntarily' enter the jail while carrying drugs. The statute is not so limited and we decline, under the guise of interpretation, to modify the statute in a manner contrary to its plain wording." Likewise, in *Gneiting*, 167 Idaho at 140, the court concluded "[i]t would be inappropriate to read a 'voluntary presence in a correctional facility' element into the statute when its plain language explicitly applies to prisoners, whose presence within a correctional facility is not voluntary." And the Wyoming Supreme Court held that its state legislature "gave no sign" in its statute, which prohibited "any person" from introducing contraband, that "it intended to exclude arrestees and inmates from the reach of that term, but adoption of the minority position would effectively create such an exclusion under the guise of statutory interpretation." *Barrera*, 403 P.3d at 1029.

While the Kansas statute does not explicitly refer to prisoners like the statutes in Arizona and Idaho, K.S.A. 21-5914 is comparable to the Wyoming statute because it has no limitation on the statute's reach. It simply states that trafficking in contraband is

14

introducing or attempting to introduce any item into a correction facility. We, too, would have to read words into the Kansas statute to reach the result requested by Hinostroza, and we decline to do so. See *Edwards*, 318 Kan. at 572 (when statute's language is unambiguous, courts do not add or ignore words).

The *Hinostroza* panel's decision aligned with the majority view. We agree and hold that an arrestee who consciously acts to conceal and carry contraband into a correctional facility acts voluntarily.

Here, viewing the evidence in the light most favorable to the State, a rational fact-finder could have found that Hinostroza engaged in a voluntary action by concealing the contraband on her person and introducing the prohibited item into the Lyon County jail. Hinostroza not only told the transporting officer she had no weapon, but she also continued to conceal the gun once at the jail. In the presence of female officers she testified to trusting, she hunched herself into a corner making the search more difficult and insisted she had and should retain control over the items hidden on her person by telling the officer, "I will get it"—never revealing that "it" included a gun. In the light most favorable to the State, a rational fact-finder could conclude she concealed the gun when asked on arrest whether she had any weapons and continued to conceal the gun when in the holding cell in the presence of the female officers. She thus could be found to have committed a voluntary act.

*Fifth Amendment*

We turn now to Hinostroza's second objection to the panel's conclusion that she acted voluntarily by bringing the gun into the jail because she did "nothing to stop or prevent the introduction of the handgun into the jail when asked if she had any weapons, unlike admitting she had a syringe." *Hinostroza*, 2022 WL 17174546, at *3. In her appellate brief, Hinostroza urged the Court of Appeals to reject the majority view on

15

voluntariness, in part, because the majority view raises Fifth Amendment implications by holding that the only way for Hinostroza to have avoided committing introducing contraband in a jail upon her arrest was for her to confess to a separate crime, possession of a firearm by a felon. We conclude Hinostroza has not preserved her argument for our review.

Throughout the trial and on appeal, the theory of the State's case has consistently been that Hinostroza decided to enter the jail facility with the contraband concealed and she thus made a voluntary intentional act. *Thompson* laid out the State's theory that criminal liability could attach if "she did nothing to stop or prevent the introduction of the [contraband] into the correctional institution." 2015 WL 9286794, at *4. Hinostroza thus could have and needed to present this Fifth Amendment issue to the trial court to preserve the issue for our review. But she did not.

Constitutional issues generally cannot be raised for the first time on appeal. Under Kansas Supreme Court Rule 6.02(a)(5) (2024 Kan. S. Ct. R. at 36) a party must provide "a pinpoint reference to the location in the record on appeal where the issue was raised and ruled on. If the issue was not raised below, there must be an explanation why the issue is properly before the court." Hinostroza provides no citation or explanation. And to the extent Hinostroza's argument relates to the question asked of her by the transporting officer, she failed to make a timely objection, and in fact later testified to the same fact herself. She thus failed to preserve any evidentiary argument. See K.S.A. 60-404 ("A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection.").

16

Hinostroza's failure to raise the issue below and argue an exception before us is fatal to her appeal on this issue. See *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018).

ISSUE 2:  SUFFICIENT EVIDENCE OF INTENT

Hinostroza also argues the State failed to present sufficient evidence that she intended to introduce a gun into the jail when she was arrested and taken to jail involuntarily. A culpable mental state is an essential element of every crime. K.S.A. 21-5202(a). But K.S.A. 21-5914 does not specify a mental state. Despite this, no party argues about what culpable mental state is prescribed under K.S.A. 21-5202(d). We thus accept without deciding that the State had to prove Hinostroza acted intentionally—the culpable mental state the State charged. As the trial judge instructed the jury, a person acts intentionally "when it is such person's conscious objective or desire to engage in the conduct or cause the result." K.S.A. 21-5202(h). Intent may be inferred from circumstantial evidence. *State v. Frantz*, 316 Kan. 708, 741 521 P.3d 1113 (2022).

The Court of Appeals panel analyzed the evidence and highlighted Hinostroza's decision to not disclose the gun and her knowledge that the gun was contraband and not allowed in the Lyon County jail. *Hinostroza*, 2022 WL 17174546, at *4. In holding this evidence was sufficient to establish intent, the *Hinostroza* panel again relied on *Conger* and *Thompson*. *Thompson*, 2015 WL 9286794, at *4 (holding State failed to establish probable cause because, "[w]hile it is true that Thompson probably did not place the marijuana in her underwear with the intention of trying to sneak it into jail, she did nothing to stop or prevent the introduction of the marijuana into the correctional institution"); *Conger*, 2005 WL 1561369, at *4 (State failed to provide sufficient evidence of intent where defendant voluntarily handed over medication).

17

Here, we have Hinostroza's own testimony establishing (1) she was asked if she had a weapon and she failed to disclose the gun hidden in her bra; (2) she made the conscious choice to conceal the weapon; and (3) she knew she could not bring a weapon into the jail. Hinostroza explained her thought process, stating she did not want to tell the male officer because she did not want him to touch her. While many could empathize with that reasoning (and setting aside the question of whether even a good excuse is enough), Hinostroza, once in the presence of female officers, made bodily movements that could be viewed as an attempt to actively conceal the gun and she never disclosed that there was also a gun in her bra. A rational fact-finder thus could conclude she intended to possess, conceal, and maintain control of the gun once in the holding cell located within the premises of the Lyon County jail.

Viewing the evidence in the light most favorable to the State, a rational fact-finder could conclude that Hinostroza intentionally introduced an item not authorized by the jail administrator into the Lyon County jail.

ISSUE 3: THE STATE PRESENTED SUFFICIENT EVIDENCE OF NOTICE

Hinostroza argues the State failed to prove the jail provided her with notice that the gun was contraband. The Court of Appeals panel rejected her argument for at least three reasons: signs were posted in the jail that specifically said weapons were prohibited; although providing an outdated statutory reference, the signs warned of possible criminal penalties; and "Hinostroza admitted she was familiar with the jail rules and was placed on notice weapons were not permitted." 2022 WL 17174546, at *5.

Although K.S.A. 21-5914, which defines the crime of trafficking contraband in an institution, does not require notice, the parties and the Court of Appeals accept that it is an element. So, too, has the pattern instruction committee. See PIK Crim. 4th 59.110 (2019 Supp.). And, consistent with the pattern instruction, the trial judge instructed the

18

jury that it had to find beyond a reasonable doubt that Hinostroza "was provided notice that the weapon was forbidden within or upon the grounds of the" jail. This inclusion of notice as an element likely arises because of this court's discussion of K.S.A. 21-3826 (now codified at K.S.A. 21-5914) in *State v. Watson*, 273 Kan. 426, 435, 44 P.3d 357 (2002).

In *Watson*, the issue was whether the statute was unconstitutional because the Legislature had delegated to the administration of each correctional institution the task of defining what items were contraband. This court upheld the constitutionality of the provision, concluding it was "constitutionally permissible for the legislature to vest the administrators of correctional institutions with the authority to determine what items constitute contraband" as long as "[a]dministrators of correctional facilities . . . provide persons of common knowledge adequate warning of what conduct is prohibited." 273 Kan. at 435.

Because the trial judge instructed it had to find that Hinostroza had notice, we will assume along with the parties that notice is thus an element to be determined and not a potential due process defense that a defendant might raise. Basing the notice requirement on *Watson*, the requirement would simply be that there is "fair notice." 273 Kan. at 435.

Hinostroza relies on *State v. Taylor*, 54 Kan. App. 2d 394, 396, 401 P.3d 632 (2017), to argue something more is required. In *Taylor*, a Court of Appeals panel cited to *Watson* as authority for an "individualized notice" requirement, a term not used in *Watson* and not defined in *Taylor*. See *Watson*, 273 Kan. at 435; *Taylor*, 54 Kan. App. 2d at 396, 422, 426-27. Hinostroza seems to argue the notice requirement meant that the jail administration needed to tell her on the day of arrest that a gun—as opposed to the word "weapon" used on the signs—was contraband. We decline to impose unstated temporal or specificity requirements beyond *Watson*'s requirement of letting persons of common knowledge know what contraband was prohibited.

We have no hesitation in concluding that people of common knowledge would know that "weapon" includes a "gun." And the State presented evidence that Hinostroza had received notice, including her own testimony that she knew she could not bring a gun into the Lyon County jail.

Just as some of our sister state courts have concluded, we will not read into the statute any requirement for a specific type of advisement. See, e.g., *Beltz*, 2024 WL 2873188, at *6 (holding "the lack of affirmative warnings in a given case is not necessarily dispositive, as the requisite awareness may be proven through other evidence, including but not limited to, a defendant's pre- and post-arrest conduct and statements"); *Borja*, 523 P.3d at 1215-17 (holding evidence sufficient despite lack of a specific advisement because other evidence supported jury finding that defendant understood bringing controlled substance into jail was illegal).

A reasonable fact-finder could rely on Hinostroza's admission alone to find she received notice that a weapon was prohibited in the Lyon County jail. But there was more. The jury heard the officer's testimony that the jail put Hinostroza on notice during her previous incarceration that she could not bring a weapon into the jail. Based on our review of the evidence in a light most favorable to the State, we hold that a rational fact-finder could have found beyond a reasonable doubt that Hinostroza had received notice that the weapon was forbidden within or upon the grounds of the jail by the jail's administration.

ISSUE 4:  NO JURY INSTRUCTION ERROR

Finally, Hinostroza argues the trial judge erred by failing to give an unrequested jury instruction telling the jury it had to find that Hinostroza received individualized notice about contraband. To determine whether the judge erred, among other things,

20

Hinostroza must show that the instruction she now proposes would have been legally appropriate. See *State v. Sinnard*, 318 Kan. 261, 291, 543 P.3d 525 (2024).

To do so, Hinostroza again relies on *Taylor* and its one reference to "individualized notice." But as we have discussed, we find no basis for that statement in the statute or in *Watson*, and the *Taylor* court offered no explanation for its use of the phrase or of its meaning. Nor does Hinostroza suggest what might be the basis for any requirement beyond notice that advises of what constitutes contraband. See *Watson*, 273 Kan. at 435. We thus conclude the trial judge committed no error by not sua sponte giving an instruction requiring the jury find that Hinostroza had received individualized notice.

CONCLUSION

We determine none of Hinostroza's arguments require us to reverse her conviction for trafficking contraband. We thus affirm her conviction.

Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.